UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAULA DINU, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>NORTHWELL HEALTH INC., MICHAEL J. DOWLING, VASSAR BROTHERS HOSPITAL, NORTHERN WESTCHESTER HOSPITAL, INC., LONG ISLAND JEWISH MEDICAL CENTER, NORTH SHORE UNIVERSITY HOSPITAL, SOUTH SHORE UNIVERSITY HOSPITAL, STATEN ISLAND UNIVERSITY HOSPITAL,<br><br>Defendants. | Civil Action No.<br><br>**NOTICE OF REMOVAL**<br><br>Removed from the<br>Supreme Court of New York<br>County of Westchester |

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK:**

Pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Northwell Health, Inc. ("Northwell Health"), Michael J. Dowling, Vassar Brothers Hospital, Northern Westchester Hospital, Inc., Long Island Jewish Medical Center, North Shore University Hospital, South Shore University Hospital, and Staten Island University Hospital (collectively "Defendants"), by and through their attorneys, Epstein Becker & Green, P.C., hereby give notice of the removal of the Civil Action pending in the Supreme Court of the State of New York, County of Westchester, Index No. 55604/2025 (hereinafter "the State Court Action"). Removal of the aforesaid action is based on the following:

**I.     PLEADINGS, PROCESS, AND ORDERS**

1. On November 14, 2025, Plaintiff filed a Second Amended Complaint ("SAC") against Defendants in the Supreme Court of the State of New York, County of Westchester,

captioned "*Paula Dinu, on behalf of herself and all others similarly situated v. Northwell Health, Inc., Michael J. Dowling, Vassar Brothers Hospital, Northern Westchester Hospital, Inc., Long Island Jewish Medical Center, North Shore University Hospital, South Shore University Hospital, Staten Island University Hospital*." A copy of the SAC alleging the class action (NYSCEF No. 38) (hereinafter both the "SAC" and "the Complaint") is attached hereto as **Exhibit A**.

2. The SAC alleges, among other things, that the "Hospital Defendants are members of an ever-expanding 'Northwell network' which creates a monopoly (monopsony) as the only potential buyer of blacklisted healthcare professionals' services" and that "the Hospital Defendants have 'agreed' and 'arranged' to [a] group boycott (blacklisting) . . . to exclude candidates who have previously alleged unlawful conduct against any one of the affiliates" in violation of General Business Law § 340. Ex. A, SAC, Prefatory Statement; *see also id.* at ¶¶ 265-291. The SAC also alleges that "this blacklisting is tortious, as it also interferes with [Plaintiff] Dinu's and the proposed class['s] right to prospective economic advantage." *Id.* Plaintiff claims in the SAC that her damages include, but are not limited to, "lost wages to the present amounting to approximately $400,000, lost front pay estimated to be well over $1 million, lost benefits, damage to her professional reputation, and emotional distress damages in excess of $2 million, all stemming directly from her wrongful termination and associated blacklisting." *Id.* at ¶ 243.

3. "Plaintiff brings this action pursuant to CPLR Article 9 on behalf of herself and a class of similarly situated individuals who, within the applicable limitations period, were employed by one or more of the Hospital Defendants and thereafter were denied re-employment, hospital privileges, or contractor opportunities based on Defendants' centralized 'do-not-hire,' blacklisting, or group-boycott policies described herein (the 'Class')." *Id.* at ¶ 249.

4. The SAC alleges that "Plaintiff's claims are typical of the claims of the Class because she, like all Class members, was subjected to Defendants' uniform blacklisting and refusal-to-deal policies, suffered loss of employment opportunities, had hospital privileges revoked, and incurred economic and reputational injury as a result of the same unlawful anticompetitive conduct." *Id.* at ¶ 254. Plaintiff commenced the State Court Action by way of Summons with Notice. A copy of the Summons with Notice filed by Plaintiff (NYSCEF No. 1) is attached hereto as **Exhibit B**. Plaintiff's Summons with Notice provides on page 9 that the Relief Sought in the State Court Action, at which time it was only a single plaintiff case, not the class action now alleged in the SAC, was:

> Compensatory damages in the sum of $3 million, and punitive damages in the sum of $10 million. If Defendants fails [sic] to appear herein, judgment will be entered by default for the sum of $13 million (or an inquest held), with interest authorized by law and the costs of this action.
>
> *Id.*

5. On October 5, 2025, Plaintiff filed in the State Court Action an "Amended Complaint," the Complaint that she filed prior to filing the SAC, the Complaint that is the subject of this removal. In the Amended Complaint, Plaintiff alleged that her damages from the Donnelly Act and Tortious Interference claims, included:

> … lost wages to the present amounting to approximately $400,000, lost front pay estimated to be well over $1 million, lost benefits, damage to her professional reputation, and emotional distress in excess of $2 million, all stemming directly from the blacklisting.

A copy of the Amended Complaint filed by Plaintiff, (NYSCEF No. 30) is attached hereto as **Exhibit C**, at ¶ 253.

6. The time for Defendants to answer or otherwise plead in response to the SAC in the State Court Action has not expired.

7.     This Notice of Removal is filed within the time prescribed under 28 U.S.C. § 1446(b).

## II.     GROUNDS FOR REMOVAL

8.     This Court has subject matter jurisdiction over this class action on the basis of 28 U.S.C. § 1332(d).

9.     This Court has original jurisdiction over this action because the prerequisites for subject matter jurisdiction under the diversity statute relating to class actions are satisfied: (1) this is a class action where the putative class includes more than 100 members; (2) there is minimal diversity of citizenship; and (3) the amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d)(2), (5)(b), (6).

### A.     The Prerequisites For Subject Matter Jurisdiction Are Satisfied

10.     The SAC alleges that the class action is on behalf of Plaintiff and "similarly situated former employees within Northwell Health, Inc.'s [ ] network of affiliated hospitals and healthcare facilities." SAC, Prefatory Statement.

11.     The SAC, at subheading K, on page 28 provides "**100,000+ employees affected by the anticompetitive illegality**." Likewise, in footnote 11, on page 22 of the SAC, Plaintiff cites to "https://jobs.northwell.edu/ ("At Northwell Health, we're 100,000+ strong—caring for millions of individuals and their families who share our neighborhoods and communities. We are a Fortune 100 Best Workplaces in Healthcare, with locations spanning across Long Island, New York City, Queens, Staten Island, Brooklyn, Hudson Valley, Westchester, Connecticut and New Jersey."), and in paragraph 48 writes, in relevant part, that Northwell is "well over 88,000 employees (and perhaps over 100,000)." *See* Ex. A, SAC, p. 28 and fn. 11.

12.     The SAC makes clear that Plaintiff reviewed the Northwell website and was fully aware of the Nuvance Health and Northwell Health merger, referred to by Plaintiff in the SAC as

the "Northwell Network." *See* Ex. A, SAC, at ¶¶ 46-47, subheading K, p. 28, at ¶ 188. It was publicly announced on May 7, 2025, more than six months prior to Plaintiff filing the SAC that Northwell Health completed its merger with Nuvance Health and that as a result of the merger the two nonprofit health systems were joined together to form a new integrated health system that "comprises 104,000 employees operating across New York and Connecticut." *See* Barbara Osborn, *Northwell Health completes merger with Nuvance Health*, NORTHWELL HEALTH (May 7, 2025) https://www.northwell.edu/news/the-latest/northwell-health-completes-merger-with-nuvance-health

13. The SAC alleges that *at minimum* 0.1% of the workforce is impacted and thus, are identified as putative class members. *See* Ex. A, SAC, at ¶ 252.

14. Based on the foregoing, this class action has potentially no fewer than 100 members of the plaintiff class. 0.1% of just the baseline number that Plaintiff Dinu writes about in the SAC establishes that the potential members are no fewer than 100 members – as subheading K provides "**100,000+ employees affected by the anticompetitive illegality**." Since the number of employees is in fact more than 104,000, based on the public information of the number of current employees, no fewer prior employees that have been terminated and therefore part of the potential class, there are *more than* 104 members of the Plaintiff's class.

15. In addition to there being more than 100 potential class members, there will also be minimal diversity, i.e. a member of the class of plaintiffs will be a citizen of a State different from the Defendants, who are citizens and a resident of New York. *See* Ex. A, SAC, at ¶¶ 2-9. This is because a significant number of current and former employees of Defendants are citizens of states other than New York, thereby satisfying 28 U.S.C. § 1332(d)(2)(A). Finally, based on Plaintiff Dinu's claims in the SAC, as well as her prior admissions (discussed in paragraphs 4 and

5 above) it must be deemed that the amount in controversy here exceeds $5 million, exclusive of interest and costs, thereby satisfying the final prerequisite for subject matter jurisdiction in this class action. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6)

16. The bar for establishing the amount in controversy is low—the notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

17. In this matter, while Defendants deny the validity and merits of Plaintiff's claims, the legal theories upon which they are based, and they further deny that Plaintiff and the putative class are entitled to any alleged claim for monetary or other relief, solely for the purposes of removal, however, and without conceding that Plaintiff or the putative class is entitled to any damages, the aggregated claims exceed the jurisdictional threshold of $5,000,000.

18. In a class action, the "claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *Shulman v. Chaitman LLP*, 392 F. Supp. 3d 340, 351 (S.D.N.Y. 2019) (internal quotations and citations omitted).

19. Plaintiff alleges that her damages include "lost wages to the present amounting to approximately $400,000, lost front pay estimated to be well over $1 million, lost benefits, damage to her professional reputation, and emotional distress damages in excess of $2 million." Ex. A, SAC, at ¶ 243. Therefore, Plaintiff asserts that she alone is entitled to well over $3,400,000 damages, which does not include the attorneys' fees that she claims she is entitled to receive. Since Plaintiff claims in the SAC that she is similarly situated to all current and/or former employees that are alleged to have been blacklisted, those individuals that "previously alleged unlawful conduct against any one of the affiliates," one reasonably and rationally must assume that the

putative class amount in controversy is more than $353 million, which is $348,600,000.00 more than the jurisdictional threshold required for subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(6)[1]. Since Plaintiff alleges that she is similarly situated, it is only reasonable to assume that the similarly situated class members were, like her, unable to find employment, and had the same or similar lost wages, back pay and front pay, loss of damages, damages to their professional reputations, and emotional distress. In the SAC, even though Plaintiff alleges that she is similarly situated to the class members, and she alleges that she alone has damages well over $3,400,000, not including attorneys' fees, she randomly, without any basis or support, theorizes that the similarly situated class only has been unemployed for 3 months, have an average annual salary of $90,000.00, for a total amount of damages for the class, excluding plaintiff, equal to $2,640,000. Aside from the fact that this is absolutely illogical, because if the class is similarly situated to Plaintiff, as she alleges, then there is no reason to assume that the class members have not suffered the same or similar damages as Plaintiff, which again according to the SAC is back pay of approximately $400,000, lost front pay estimated to be well over $1 million, lost benefits, damages to their professional reputations, and emotional distress damages in excess of $2 million, which is, as explained above, well over $3,400,000. *See* Ex. A, SAC, at ¶ 243. Nonetheless, even taking Plaintiff's random number of damages of the putative class Plaintiff seeks to represent at to $2,640,000, this amount added to Plaintiff's damages of well over $3,400,000, is $6,040,000, which is well over the statutory requirement of the aggregated claims exceeding the sum or value of $5,000,000, exclusive of interest and costs. Moreover, using the SAC estimate of the class being, at a minimum, "0.1% of the workforce," a workforce across the Defendants that is today

---

[1] 28 U.S.C.§ 1332(d)(6) provides, "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."

over 104,000 employees – the aggregate class damages, not including attorneys' fees, which are also appropriately included in the calculation, is an amount of damages equal to $6,520,000 (0.1% of 104,000 is 104, and 104 x $30,000 = $3,120,000, plus Plaintiff Dinu's alleged damages of $3,400,000 = $6,520,000, again well over the statutory amount necessary to establish subject matter jurisdiction for this class action.[2] Further, if these, at a minimum, 104 class members, not including Plaintiff, have damages similar to Plaintiff's, their combined damages is an amount of *at least* $353,600,000, which, when combined with Plaintiff's damages, equals a sum or value of damages as alleged in the SAC of $357,000,000. Even taking Plaintiff Dinu's backpay number alone of approximately $400,000, and not including her claims of damages for front pay estimated to be well over $1 million, lost benefits, and damage to her professional reputation, and emotional distress, the back pay alone for her and the 0.1% of the Defendants' workforce – the minimum of the 104 individuals – the combined claims of the 105 individuals (Plaintiff plus the minimum 104 class members she seeks to represent) for back pay alone is $42,000,000.

### III.   REMOVAL IS PROCEDURALLY PROPER AND TIMELY

19.   Removal is timely because Defendants filed this notice within thirty days of Plaintiff's November 14, 2025 filing of the SAC. *See* 28 U.S.C. § 1446(b)(1).

20.   Removal to this Court is proper because the United States District Court for the Southern District of New York embraces the location where the State Court Action was commenced and is pending—Westchester, New York. *See* 28 U.S.C. §§ 89(b), 1441(a).

21.   Defendants submit with this notice a copy of all process, pleadings, and orders served upon it in this action as **Exhibit D,** inclusive of the documents identified by Exhibits A-C,

---

[2] Plaintiff's presumption of a minimum of a "0.1 percent size putative class" is set forth in the SAC at paragraphs 250 and 252. As explained in paragraph 11 of this Removal, the integrated health system of Northwell Health since May 7, 2025 encompasses over 104,000 employees. Thus, the putative class, including Plaintiff, is over 105.

along with a copy of the Amended Summons (NYSCEF No. 2), Complaint (NYSCEF No. 5), Court Notice, dated October 3, 2025 (NYSCEF No. 28), Proposed Order, dated October 3, 2025 (NYSCEF No. 29), and Summons (Post RJI) (Amended) (NYSCEF No. 31). Exhibit D constitutes all of the process, pleadings, and orders served on Defendants in the State Court action. In compliance with 28 U.S.C. § 1446(a), Defendants are providing the Court with a "copy of all process, pleadings, and orders served upon" Defendants prior to the filing of this Notice of Removal. *See* 28 U.S.C. § 1446(a).

22. Defendants will provide prompt written notice to Plaintiff, through counsel, of this removal, in accordance with 28 U.S.C. § 1446(d).

23. Defendants will promptly file a copy of this notice of removal with the Clerk of the Supreme Court of the State of New York in and for the County of Westchester, in accordance with 28 U.S.C. § 1446(d).

**IV.   NON-WAIVER**

24. If the Court determines that the pleadings and other documents to date lack adequate information from which to ascertain the prerequisites to jurisdiction, the time within which to remove will have not begun to run, and Defendants reserve the right to remove this action at the appropriate time.

25. Defendants do not waive, and expressly preserve, all objections and defenses they may have, including but not limited to those permitted pursuant to Rules 4 and 12 of the Federal Rules of Civil Procedure.

Dated:  December 1, 2025                         Respectfully submitted,

**Epstein Becker & Green, P.C.**

By:        */s/ Traycee Ellen Klein*
           Traycee Ellen Klein, Esq

875 Third Avenue
New York, New York 10022
(212) 351-4812
Email: TKlein@ebglaw.com

*Attorneys for Defendants*