UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAULA DINU,<br><br>Plaintiff,<br><br>-against-<br><br>NORTHWELL HEALTH INC., et al.,<br><br>Defendants. | 25-CV-3281 (JGLC) ("Dinu V") |
| PAULA DINU, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>NORTHWELL HEALTH, INC., et al.,<br><br>Defendants. | 25-CV-9972 (JGLC) ("Dinu IV") |

## **OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Present before the Court are motions in two related cases. However, including these two instant actions, Plaintiff Paula Dinu has filed a total of five cases against various Defendants, including Northwell Health Inc., its president and chief executive officer Michael J. Dowling, and Phelps Memorial Hospital Association, arising from alleged workplace harassment and her subsequent demotion and termination from her position as a Director of Speech and Audiology.

This Order addresses the two most recent lawsuits Plaintiff has filed. Plaintiff's fourth lawsuit, which was removed to this Court from state court, alleges a conspiracy to blacklist Plaintiff from obtaining employment among Northwell's various affiliate hospitals. Plaintiff's fifth lawsuit brings various federal and state discrimination and retaliation claims. In both of these lawsuits, Plaintiff has made allegations about the Defendants' counsel and characterized their litigation tactics as retaliatory.

Before the Court are Defendants' Motion to Dismiss Plaintiff's fifth lawsuit, to strike her pleading in that case, and for sanctions, and Plaintiff's Motion to Remand her fourth lawsuit to state court. For the reasons stated herein, the Court grants Plaintiff's Motion to Remand her fourth lawsuit, *Dinu IV*, to state court, but denies Plaintiff's request for attorney's fees related to Defendants' removal. The Court grants in part and denies in part Defendants' Motion to Dismiss, Strike, and Sanction.

## BACKGROUND

### I. Facts

The following facts are, unless otherwise noted, taken from the Amended Complaint, *Dinu v. Northwell Health Inc.*, No. 25-CV-3281 (S.D.N.Y. Apr. 21, 2025) ("*Dinu V*"), ECF No. 52 ("Am. Compl."), and presumed to be true for the purposes of the instant motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Plaintiff Paula Dinu is a resident of Fishkill, Dutchess County, New York. Am. Compl. ¶ 1. Defendants include Northwell Health, Inc. ("Northwell") and Phelps Memorial Hospital Association ("Phelps"), both New York corporations. *Id.* ¶¶ 2–3. Defendant Michael J. Dowling is the president and chief executive officer of Northwell, and officer, director, or "person with influence" over Phelps' corporate affairs. *Id.* ¶¶ 4–5. Plaintiff alleges that Phelps is "effectively a

shell corporation of Northwell" and that Northwell and Phelps "jointly" own, manage, and operate Phelps Hospital. *Id.* ¶¶ 6–7. Plaintiff also alleges that Northwell and Phelps were Plaintiff's joint employers. *Id.* ¶ 8.

As of September 2025, Plaintiff was a 52-year-old woman who had worked at Phelps Hospital for over 15 years as a speech pathologist. *Id.* ¶¶ 11–12. Plaintiff served in the position of Deputy Director, then served almost six years as Director of Speech and Audiology. *Id.* ¶¶ 12, 14. As Director, Plaintiff's direct supervisor was Assistant Vice President of Operations/Ancillary Services Michael Glennon, who allegedly has neither an education in medical science nor a college degree. *Id.* ¶¶ 15–16, 25.

Plaintiff alleges that she was subjected to unprofessional conduct by Glennon, including persistent "unwanted flirtatious conduct" and "sexually inappropriate conduct amounting to sexual harassment." *Id.* ¶ 18. This conduct included Glennon "groping" Plaintiff at holiday parties; "deceiving her into meeting [him at] a bar alone after indicating other staff would attend;" and "sending her unwelcome texts of a personal nature late at night, including texts" referring to Plaintiff as his "mistress," including asking "where is my mistress?" *Id.* ¶ 19. Plaintiff "tolerated the conduct as annoying but not insufferable." *Id.* ¶ 20.

Subsequently, Plaintiff had surgery to remove a brain tumor. *Id.* ¶ 21. After this, Glennon was less flirtatious, but engaged in "sexist comments and actions," such as "comments demeaning Ms. Dinu on account of her gender; purposefully embarrassing Ms. Dinu in front of her peers and subordinate; and treating her less favorably than he treated male management and non-management employees." *Id.* ¶ 21. Glennon also expressed increasing disdain and hostility towards Plaintiff after she developed delayed-onset complications from her brain surgery throughout 2019–2021. *Id.* ¶ 22.

In mid-2021, Glennon "began to baselessly criticize some of Ms. Dinu's job performance in her annual leader review." *Id.* ¶ 24. Previously, Plaintiff's performance evaluations "had always been 'outstanding.'" *Id.* ¶ 32. Plaintiff alleges that Glennon's criticism was "retaliatory" in response to complaints by "various women," including Plaintiff, about Glennon's sexist behaviors. *Id.* ¶¶ 26–27. For example, Glennon knew that Plaintiff complained about his behaviors to Phelps Hospital's top management, including its executive director and deputy executive director. *Id.* ¶ 28. Glennon also knew that other women in Plaintiff's speech and audiology department had complained about him. *Id.* ¶ 29.

On February 2, 2022, Plaintiff and Glennon met with Plaintiff's subordinate, Carolyn Bossinas. *Id.* ¶¶ 34–35. Plaintiff claims that Bossinas "was a much less credentialed speech pathologist" than Plaintiff, but was "willing to support Mr. Glennon in return for the reward of possibly being promoted into Ms. Dinu's job as Director." *Id.* ¶ 36. At the meeting, Glennon asked that Plaintiff "admit to spreading false rumors or making false statements about [him]," but Plaintiff refused. *Id.* ¶ 37. Glennon also "mocked her about still-lingering brain-surgery related disabilities by accusing her of having memory failure." *Id.* ¶ 38.

On February 6, 2022, Plaintiff then lodged an ethics complaint about Glennon with Northwell and requested that she be assigned to work under a new direct supervisor. *Id.* ¶¶ 41, 43–45. The complaint included allegations regarding the February 2 meeting and Glennon's sexual harassment, such as his "drunk texting" and "invasion of her personal space." *Id.* ¶ 45.

Two weeks later, on February 25, 2022, one of Plaintiff's subordinates submitted a "bogus and retaliatory" complaint about Plaintiff. *Id.* ¶¶ 66 n.4, 68. Plaintiff alleges that the complaint contained a "made-up accusation" from Glennon, which was submitted "through [Glennon's] accomplice and surrogate, Ms. Bossinas." *Id.* ¶ 59. In making this complaint,

Glennon and Bossinas convinced Plaintiff's administrative assistant, Nicole Lamanna—someone Plaintiff considered a "little sister"—"to betray [Plaintiff's] confidence." *Id.* ¶¶ 69, 76. Lamanna sent them "personal texts sent to her by" Plaintiff. *Id.* ¶ 72. Plaintiff characterizes these texts as attempts to warn Lamanna about Glennon's sexual harassment. *Id.* ¶ 81. Lamanna was subsequently promoted to project manager, and then senior project manager. *Id.* ¶ 79.

Plaintiff alleges that Northwell, "in conspiratorial cooperation with Phelps Hospital," investigated this "made-up accusation" against Plaintiff. *Id.* ¶ 59. However, Plaintiff alleges that neither Northwell nor Phelps Hospital conducted an investigation into her complaint against Glennon. *Id.* ¶¶ 53–54. Rather, Plaintiff alleges that Elizabeth Dore, Northwell's human resources official who was assigned to investigate both Plaintiff's ethics complaint and the complaint against Plaintiff, did not properly investigate Plaintiff's allegations against Glennon and did not seek Plaintiff's "side of the story." *Id.* ¶¶ 88–95, 104–07.

On May 2, 2022, Plaintiff was removed from her position as Director. *Id.* ¶ 96. Plaintiff was demoted "four levels," from Director to staff employee (senior speech pathologist), but maintained the same salary. *Id.* ¶¶ 97–98. Plaintiff alleges that Phelps Hospital did not have the authority to fire Plaintiff at that time, because it needed Northwell's express permission to do so. *Id.* ¶ 114. Plaintiff alleges that she was intentionally humiliated following her demotion, including by being placed at a desk in a highly visible reception area, and was required to do administrative tasks. *Id.* ¶¶ 116–19. Bossinas was promoted into the role of acting director, and then, director. *Id.* ¶ 101.

Plaintiff then makes various allegations about communications between her present counsel and Northwell's attorney, Jonathan Moskowitz. *Id.* ¶ 120. Plaintiff alleges that

Northwell's attorney "intentionally misle[]d" Plaintiff's counsel about who Plaintiff's actual employer was (Phelps, rather than Northwell). *Id.* ¶¶ 121–25.

Plaintiff also alleges that, following her demotion, she communicated directly with CEO Dowling, who, instead of investigating Plaintiff's complaints, allowed Defendants' outside counsel "to undertake retaliatory litigation tactics for the purpose of hindering and preventing [Plaintiff] from obtaining justice in the state courts." *Id.* ¶¶ 126–27.

Subsequently, in October 2022, Plaintiff was accused of leaving the hospital grounds early on August 17 and August 19, 2022. *Id.* ¶ 183. Furthermore, on October 20, 2022, Plaintiff was scheduled to assist in performing a radiological procedure on a six-year-old, and, for the safety of the patient, inquired whether qualified pediatric personnel were also scheduled for the procedure. *Id.* ¶¶ 187–89. In fact, no pediatric-experienced radiation technician or pediatric standby nurse had been scheduled. *Id.* ¶ 189. Plaintiff alleges that in response to her inquiry, "Phelps Hospital management officials then ambushed [Plaintiff] in a manner apparently intended to trigger [her] acute stress disorder." *Id.* ¶ 190. This "confrontation" did cause Plaintiff to have a panic attack, and she was "temporarily unable to safely perform her job." *Id.* ¶ 192.

On November 2, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 195. Plaintiff requested that the EEOC investigate Glennon's sex and disability discrimination and her demotion. *Id.* ¶ 196. On June 20, 2023, Northwell and Phelps submitted their position statement to the EEOC. *Id.* ¶ 197. The position statement identified Plaintiff's employer as Phelps. *Id.* ¶ 198. Subsequently, Plaintiff provided the EEOC with a supplemental charge, signed by Plaintiff on September 22, 2023, and emailed to the EEOC on October 16, 2023. *Id.* ¶¶ 195, 205.

On November 12, 2022, Defendants issued Plaintiff a "Disciplinary Warning Notice and Action Taken" regarding her leaving early and failing to complete full days of work on those two days in August. *Id.* ¶ 185. On January 13, 2023, Plaintiff was terminated. *Id.* ¶¶ 207, 261. Plaintiff's termination "was expressly based upon the events of October 20, 2022." *Id.* ¶ 208.

On January 30, 2025, Plaintiff received a Notice of Right to Sue from the EEOC. *Id.* ¶ 311; *id.* at 74.

## II. Procedural History

### A. *Dinu I*

On July 31, 2022, approximately three months after her May 2, 2022 demotion, but prior to her January 13, 2023 termination, Plaintiff commenced *Dinu I* in the Dutchess County Supreme Court, No. 2022-52531, suing Northwell and certain individuals (the "Phelps Hospital Defendants") to enjoin unlawful discrimination and reprisal. Am. Compl. ¶¶ 96–98, 261; *id.* at 77; *Dinu V*, ECF No. 60-1 (*Dinu I* Complaint).

On November 9, 2022, Plaintiff filed an Order to Show Cause in *Dinu I*, asking that the Court direct Northwell to transfer her place of employment. *Id.* ¶ 239. Specifically, Plaintiff requested "[t]ransfer to Northern Westchester Hospital, as an appropriate reasonable accommodation of [her] psychological impairments (anxiety and acute stress disorder)." *Dinu V* ECF No. 60-7 at 3.

On November 20, 2022, Defendants filed a motion to dismiss *Dinu I*. Am. Compl. ¶ 175. At a November 23, 2022 court conference, Defendant's counsel stated that Northwell could not transfer or relocate Plaintiff as requested, because Northwell and Phelps were "separate" businesses. *Id.* ¶¶ 240–41.

On December 1, 2022, Plaintiff filed an amended complaint adding Phelps as a defendant. *Id.* ¶¶ 250–51. Northwell did not consent to the addition of Phelps, and Phelps could not be timely served under New York law. *Id.* ¶ 252. Northwell then did not answer the amended complaint, and Plaintiff filed a motion for default judgment. *Id.* ¶¶ 254–57.

On August 7, 2023, the state court denied Northwell's motion to dismiss, denied Plaintiff's motion for default judgment, and allowed Plaintiff 45 days to serve all of the *Dinu I* defendants. *Id.* at 81. Plaintiff declined to serve the *Dinu I* defendants and instead appealed the denial of her motion for a default judgment, which to the Court's knowledge is still pending before the Second Department at Docket No. 2023-08373. *Id.* ¶¶ 177–78 n.20; *id.* at 81. Needless to say, the 45 days allotted for timely service has long since expired.

**B. *Dinu II***

On January 17, 2023, four days after Plaintiff's termination, Plaintiff commenced *Dinu II* against Phelps alone in the Dutchess County Supreme Court, No. 2023-50184. *Id.* ¶ 261, at 79; *Dinu V*, ECF No. 60-17 (*Dinu II* Complaint). Plaintiff brought two causes of action: first, violation of New York Labor Law § 741, for "reprisal for seeking to protect a young hospital patient's safety," and second, requesting the preliminary injunctive relief of, *inter alia*, an injunction to restrain continued violation of New York Labor Law § 740, reinstatement of Plaintiff to her position prior to the alleged retaliation, and compensation for lost wages and benefits. *Dinu V*, ECF No. 60-17 ¶¶ 39–63.

On August 18, 2023, the Dutchess County Supreme Court dismissed *Dinu II* and sanctioned Plaintiff's counsel with a $500 fine. Am. Compl. at 81. The court sanctioned Plaintiff's counsel due to his failure to "even attempt to effectuate service" in *Dinu I* or *Dinu II*, and the "frivolous" nature of both the commencement of *Dinu II* and Plaintiff's motion for

default judgment. *Id.* Plaintiff's appeal of *Dinu II*'s disposition is also currently pending before the Second Department. *Id.* ¶¶ 141 n.15, 300.

**C. *Dinu III***

On June 9, 2025, following the state court's dismissal of *Dinu II*, Plaintiff filed *Dinu III* against Phelps and Phelps Hospital in the Westchester County Supreme Court, No. 55525/2025. *Dinu V*, ECF Nos. 60-19 to 60-20 (*Dinu III* Complaint). In *Dinu III*, Plaintiff brings two causes of action: violations of New York Labor Law §§ 740–41, arising from Phelps' "reprisal for seeking to protect a young hospital patient's safety" and "reprisal for informing Phelps Hospital that it would be committing negligence, and violating standards of care and patient's right to informed consent, if it undertook the pediatric MBS procedure without a qualified radiology technician." *Dinu V*, ECF No. 60-20 ¶¶ 97–140. Both of these causes of action arise from events on October 20, 2022, "the last day [Plaintiff] worked at Phelps Hospital." *Id.* ¶¶ 10, 22–57. *Dinu III* is still pending in Westchester County Supreme Court. Am. Compl. ¶¶ 141 n.15, 306. The Amended Complaint alleges that the case remains in its "infancy." *Id.* ¶ 306.

**D. *Dinu IV***

On January 13, 2025, Plaintiff initiated a fourth action, *Dinu IV* in the Westchester County Supreme Court, No. 55604/2025, by way of service of a summons with notice. Notice of Removal, *Dinu v. Northwell Health, Inc.*, No. 25-CV-9972 (S.D.N.Y. Dec. 1, 2025) ("*Dinu IV*"), ECF No. 1 ("NOR"); *Dinu IV*, ECF No. 1-2. The initial summons and notice alleged a bevy of claims, including discrimination and retaliation in violation of the New York State Human Rights Law, retaliation against whistleblowing activity in violation of New York Labor Law §§ 740 and 741, defamation, black-listing, collusion, tortious interference with prospective business

relations, negligent and intentional infliction of emotional distress, and violation of the Donnelly Act. *Dinu IV*, ECF No. 1-2.

*Dinu IV* was initiated as a single-plaintiff case against Defendants Northwell, Dowling, Vassar Medical Center, Northern Westchester Hospital, Inc., Long Island Jewish Medical Center, North Shore University Hospital, Bay Shore University Hospital, and Staten Island University Hospital. *Id.*

On October 5, 2025, Plaintiff filed an Amended Complaint. *Dinu IV*, ECF No. 1-3. In her Amended Complaint, Plaintiff brought three claims for relief: (1) violation of the Donnelly Act, (2) tortious interference with prospective economic advantage, and (3) violation of New York State Judiciary Law § 487 by Defendants' attorneys, for "deceit" and "willful delay." *Id.* Plaintiff substituted "Vassar Medical Center" with "Vassar Brothers Hospital" and "Bay Shore University Hospital" with "South Shore University Hospital" as defendants, and added to the suit Defendants' counsel, Traycee Ellen Klein and Epstein Becker Green, PC. *Id.*

On November 14, 2025, Plaintiff filed a Second Amended Complaint against Defendants Vassar Brothers Hospital, Northern Westchester Hospital, Inc., Long Island Jewish Medical Center, North Shore University Hospital, South Shore University Hospital, and Staten Island University Hospital (collectively, the "Hospital Defendants"), and Northwell Health, Inc. and Michael J. Dowling, (collectively, with the Hospital Defendants, the "Class Action Defendants"). *Dinu IV*, ECF No. 1-1 ("SAC") at 1. The Second Amended Complaint purports to be a class action brought on behalf of a poorly defined class of former (and perhaps current) employees at the Defendant hospitals, all of which are part of the Northwell system. *See SAC.* Phelps, the hospital at which Plaintiff worked (and the only hospital at which she worked, to the best of this Court's knowledge), is not a defendant in the *Dinu IV* class action. *See id.*

The pleading asserts three claims, all of which arise under New York State law: (1) violation of the Donnelly Act, N.Y. Gen. Bus. Law § 340, damaging Plaintiff, (2) violations of the Donnelly Act damaging the proposed class, and (3) tortious interference with Plaintiff's and the proposed class's prospective contractual relations. *Id.* ¶¶ 265–91. The pleading essentially contends that the Class Action Defendants engaged "in a group boycott (i.e., blacklisting) in restraint of trade harming Ms. Dinu and similarly situated former employees within Northwell Health, Inc's . . . network of affiliated hospitals and healthcare facilities." SAC at 1.

Plaintiff alleges that Class Action Defendants "are members of an ever-expanding 'Northwell network' which creates a monopoly (monopsony) as the only potential buyer of blacklisted healthcare professionals' services within substantial portions of this region of New York State" (the Hudson Valley and the New York City/Long Island metro area). *Id.* Specifically, Plaintiff alleges that, following her termination by Northwell and Phelps Hospital, she was "blacklisted throughout Northwell's entire network of affiliated hospitals." *Id.* ¶ 18. She alleges that she "applied for speech pathology jobs at each of Northwell's affiliates named as a [D]efendant . . . including re-applications." *Id.* ¶ 19. However, despite being "eminently qualified" for all jobs sought and although some of the hospitals "indicated a strong interest" in Plaintiff's candidacy, she was never given an interview. *Id.* ¶¶ 20–23.

Plaintiff also alleges that following her termination, her hospital privileges throughout the Northwell network of affiliates were revoked. *Id.* ¶ 30. Plaintiff alleges that this "prevent[ed her] from working as a healthcare consultant in her field within the entire Northwell system." *Id.* ¶ 32. Plaintiff also alleges that the blacklisting policy "has harmed not only [herself], but also harms or potentially harms all individuals presently employed by any of the Hospital Defendants, as well as all individuals previously employed but not blackballed from employment." *Id.* ¶ 186.

Plaintiff alleges lost wages "amounting to approximately $400,000, lost front pay estimated to be well over $1 million, lost benefits, damage to her professional reputation, and emotional distress damages in excess of $2 million." *Id.* ¶ 243.

With respect to the class claims, Plaintiff alleges that she and all "similarly situated former employees" are tagged with an indication such as "do not re-hire" when they apply to Northwell or its affiliates seeking employment following termination. *Id.* ¶ 28. She alleges that the Northwell network employs "well over 88,000 employees (and perhaps over 100,000 employees after its recent merger or pending merger with Nuvance)." *Id.* ¶ 48. Plaintiff also alleges that "100,000+ employees [are] affected by the anticompetitive illegality." *Id.* at 28. Plaintiff states that the blacklist harms "overall competition" for those seeking healthcare jobs, and that it intimidates "Northwell's 88,000+ employees" from lodging complaints. *Id.* ¶¶ 187–88. Therefore, Plaintiff proposes a class of those "employed by one or more of the Hospital Defendants and thereafter were denied re-employment, hospital privileges, or contractor opportunities based on Defendants' centralized 'do-not-hire,' blacklisting, or group-boycott policies." *Id.* ¶ 249.

Plaintiff contends that at least 88 of Defendants' 88,000 employees were similarly blacklisted, and estimates that "[t]he members of the proposed class have been damaged thereby, in an amount estimated to be above $3 million but under $5 million." *Id.* ¶ 283. Plaintiff pleads that "the class will not seek from the Defendants a penalty in the form of treble damages," although she personally intends to seek "treble damages under the Donnelly Act against the Hospital Defendants." *Id.* ¶¶ 280, 284.

On December 1, 2025, the Class Action Defendants removed this state action to this Court on the basis of the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA").

*Dinu IV*, ECF No. 1 ¶¶ 8–9. On December 24, 2025, Plaintiff moved to remand the action to state court. *Dinu IV*, ECF No. 6. On December 29, 2025, the Court granted a motion to stay the case. *Dinu IV*, ECF No. 12. On February 17, 2026, Defendants filed their Opposition to Plaintiff's motion to remand, on the grounds that the requirements for CAFA jurisdiction were satisfied and that no statutory exceptions applied. *Dinu IV*, ECF No. 18. On February 27, 2026, Plaintiff filed her Reply. *Dinu IV*, ECF No. 19. This Opinion will dispose of the remand motion.

**E. *Dinu V***

Meanwhile, on April 21, 2025, Plaintiff initiated her second federal action, *Dinu V*, No. 25-CV-3281, in this Court. *Dinu V*, ECF No. 1. Plaintiff initiated this federal action "to enforce her federal employment discrimination/reprisal and civil rights claims and hopefully eventually receive an order from this Court reinstating her as a Director at Phelps Hospital (which is now under entirely new management)." Am. Compl. ¶ 305. Plaintiff sued Northwell Health Inc., Phelps Memorial Hospital Association, Michael J. Dowling, and several other individuals: Eileen Egan, Tracy Feiertag, Michael Glennon, and Carolyn Bassinas. *Dinu V*, ECF No. 1.

On April 29, 2025, Plaintiff filed a "corrected" Complaint. *Dinu V*, ECF No. 16 ("Compl."), which Defendants moved to dismiss on June 30, 2025, *Dinu V*, ECF No. 26. Plaintiff's corrected Complaint included numerous allegations about the behavior of counsel for the *Dinu I* and *Dinu II* Defendants, asserting that "the attorneys for Northwell and Phelps Memorial engaged in conduct designed to obstruct Plaintiff's ability to seek justice in the courts." Compl. ¶¶ 91–95.

On September 3, 2025, the parties appeared at a conference before the Court. *Dinu V*, ECF No. 56 ("Sept. 3 Conf."). The Court granted Plaintiff leave to file an amended complaint, and dismissed Defendants' original motion to dismiss as moot. *Id.*

At the September 3 conference, the Court asked Plaintiff's counsel to identify cases "where an attorney's conduct representing an employer . . . could constitute retaliation," and specifically for cases that "stand for the proposition that simply asserting defenses available to a party, like lack of service, constitutes retaliation under Title VII." *Id.* at 12:6–25. Plaintiff's counsel was unable to identify any specific cases. *See id.* at 13. The Court then warned Plaintiff's counsel that he must consider Federal Rule of Civil Procedure 11 and its requirement that filings be supported by fact and law before filing an amended pleading. *Id.* at 22:10–18. The Court also warned that, if Plaintiff continued to include "allegations related to other cases that are alleged to be part of alleged retaliation," a motion to strike "would likely be appropriate." *Id.* at 22:19–22. The Court subsequently warned Plaintiff's counsel that he must include in any amended pleading a legal basis for his allegations that Defendants' counsel's litigation tactics amounted to retaliation, or the Court would strike these allegations and consider sanctions. *Id.* at 26:11–27:2 (stating "to the extent I strike any allegations, I will consider whether sanctions are appropriate because I have warned you"). The Court also ordered Plaintiff to file along with the amended complaint, a redline of the amended and past pleading. *Id.* at 23:16–19, 24:5–11.

On September 22, 2025, Plaintiff filed her Amended Complaint, which brings claims only against Defendants Northwell, Phelps, and Michael J. Dowling and drops the rest of the Defendants. Am. Compl. In the *Dinu V* Amended Complaint, Plaintiff brings six claims for relief:

(1) disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), *id.* ¶¶ 315–23;

(2) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), *id.* ¶¶ 324–32;

(3) retaliation in violation of Title VII and the ADA, *id.* ¶¶ 333–38;

(4) gender and disability-based discrimination and retaliation in violation of the New York State Human Rights Law, New York Executive Law § 290, *et seq.* ("NYSHRL"), in which Plaintiff alleges that Dowling "is an aider and abettor," *id.* ¶¶ 339–42;

(5) conspiracy by Northwell and Phelps Hospital to deprive Plaintiff of her civil rights in violation of 42 U.S.C. § 1985, *id.* ¶¶ 343–51; and

(6) violation of 42 U.S.C. § 1986 against Dowling, Northwell, and Phelps, *id.* ¶¶ 352–65.

Plaintiff attached to her pleading the February 6, 2022 ethics complaint against Glennon, an April 30, 2022 letter from her counsel to the Executive Director of Northwell and Phelps Hospital, the January 30, 2025 EEOC Notice of Right to Sue, and a chronology of *Dinu I* and *Dinu II*. *Id.* at 62–81. However, Plaintiff did not file a redline, as ordered by the Court. *See* Am. Compl.

In her Amended Complaint, Plaintiff also continues to allege that the conduct of Defendants' counsel in *Dinu I* and *Dinu II* was improper. Specifically, regarding *Dinu I*, Plaintiff alleges that Defendants' lawyers engaged in "retaliatory" conduct against Plaintiff while defending against *Dinu I*, in an attempt to "coerce [Plaintiff] into resigning." *Id.* ¶¶ 136–43. This conduct includes Plaintiff's allegation that attorney Moskowitz intentionally deceived Plaintiff about the identity of her employer, as Moskowitz "accept[ed] service for Northwell" without informing Plaintiff's counsel that Phelps Hospital—not Northwell—was the employer of Plaintiff and the individual *Dinu I* Defendants. *Id.* ¶¶ 144–60. Plaintiff also alleges that Northwell was, in fact, her employer—or was at least her joint employer along with Phelps. *Id.* ¶¶ 8, 152.

Plaintiff also alleges that Northwell's and the individual Phelps Hospital Defendants' agreement to waive service of process in *Dinu I* was an obstruction tactic. *Id.* ¶ 161. On August 1, 2022, Moskowitz responded by email to Plaintiff's counsel that Moskowitz would accept

service of process on behalf of all Defendants. *Id.* ¶ 162. About two weeks later, Northwell's outside counsel, Traycee Ellen Klein, likewise agreed to waive service. *Id.* ¶ 167.

On November 20, 2022, the *Dinu I* Defendants filed a motion to dismiss (which Plaintiff separately characterizes as an impermissible "ambush" and containing "false assertions"). *Id.* ¶¶ 220–27. Plaintiff asserts that in this motion to dismiss, Northwell failed to explicitly raise any personal jurisdiction defense, and thus waived it. ¶ 176. However, Plaintiff asserts that Northwell nevertheless continued to assert a personal jurisdiction defense with references to lack of service at a November 23, 2022 court conference and later, in April 2023. *Id.* ¶¶ 164, 171–72, 231. Plaintiff argues that Defendants' counsel raising this personal jurisdiction defense constitutes bad faith retaliation against Plaintiff. *Id.*

Plaintiff also alleges that counsel Klein "ambush[ed]" Plaintiff at the November 23, 2022 court conference by informing the court that Plaintiff is employed by Phelps Hospital, rather than Northwell. *Id.* ¶¶ 233–24. Plaintiff argues both that "this was a misrepresentation to the state court," because "Northwell was at minimum a joint employer with Phelps," and that Moskowitz and Klein had "previously created the impression (deceit by silence) that they represented [Plaintiff's] employer, Northwell." *Id.* ¶¶ 235–36.

Furthermore, Plaintiff asserts that at this November 23, 2023 conference, Defendant's counsel "deceived" the state court "into believing that it had no power to grant the equitable relief" of transferring Plaintiff to another position. *Id.* ¶¶ 244–46. Specifically, Plaintiff alleges that Northwell did have the power to transfer employees to Northern Westchester Hospital, but refused to in Plaintiff's case because of her disciplinary status. *Id.* ¶¶ 242–43.

Regarding *Dinu II*, Plaintiff alleges that Northwell hindered service of process upon Phelps, by refusing to waive service and refusing to cooperate with Plaintiff's counsel in

arranging service. *Id.* ¶¶ 265–67, 274. Plaintiff also alleges that Klein misrepresented to the state court in *Dinu II* that Plaintiff's service of process was untimely. *Id.* ¶ 276. Plaintiff asserts that the parties agreed to place *Dinu I* and *Dinu II* in abeyance, tolling all time periods, including the deadline for service. *Id.* ¶¶ 278–81. Plaintiff also asserts that Klein misrepresented that service was done in an improper manner. *Id.* ¶¶ 283–88. Finally, Plaintiff asserts that Klein misrepresented that *Dinu II* involved the same claims for relief against the same parties as *Dinu I*. *Id.* ¶ 289.

On December 15, 2025, Defendants filed the present Motion to Dismiss. *Dinu V*, ECF No. 58. Defendants move for Plaintiff's Amended Complaint to be stricken and/or dismissed pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), 12(b)(6), and 12(f). *Id.* They also ask that a limited filing injunction be imposed against Plaintiff and her counsel. *Dinu V*, ECF No. 61 ("MTD") at 1. On January 30, 2026, Plaintiff filed her Opposition, *Dinu V*, ECF No. 65, along with a declaration by Plaintiff's counsel, *Dinu V*, ECF No. 66 ("Diederich Decl."). On February 27, 2026, Defendants filed their Reply. *Dinu V*, ECF No. 67.

## LEGAL STANDARD

### I. Motion to Remand

"The governing provision of the federal removal statute authorizes a defendant to remove 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 386 (1998) (citing 28 U.S.C. § 1441(a)). Removal statutes are construed narrowly "out of respect for the limited jurisdiction of the federal courts and the rights of the states." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007). But once it has been determined that a federal court does have jurisdiction, the federal court has "a 'virtually unflagging obligation' to

exercise [its] jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

**II. Motion to Dismiss**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). If a complaint does not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

## DISCUSSION

This discussion is divided into two parts. The Court first addresses the pending motion to remand in *Dinu IV* before turning to Defendants' motion to dismiss or to strike and motion for sanctions in *Dinu V*.

## I. Plaintiff's Motion to Remand *Dinu IV* Is Granted

The Court remands *Dinu IV* to state court. Although Defendants established that the initial jurisdictional requirements were met, at least one statutory exception to federal jurisdiction applies. The Court denies Plaintiff's request for attorney's fees incurred as a result of Defendants' removal because Plaintiff has not shown that removal was objectively unreasonable.

### A. Defendants Showed by a Reasonable Probability that the Jurisdictional Elements Are Satisfied

Plaintiff seeks remand of *Dinu IV* to state court on the ground that removal under CAFA was defective. *Dinu IV*, ECF No. 8 ("MTR") at 1.

CAFA provides that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—" there is minimal diversity, *i.e.*, where at least one plaintiff and one defendant are citizens of different states, and "the number of members of all proposed plaintiff classes in the aggregate" is 100 or more. 28 U.S.C. § 1332(d)(2), (d)(5)(B).

"Jurisdictional facts, 'such as the amount in controversy,' are evaluated 'on the basis of the pleadings, viewed at the time when defendant files the notice of removal.'" *Howard v. Anthem, Inc.*, 638 F. Supp. 3d 133, 139 (D. Conn. 2022) (quoting *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 239 (2d Cir. 2014)); *see also Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 368 (S.D.N.Y. 2006) ("Another guiding principle is that the propriety of removal is to be determined by the pleadings at the time of removal.") (collecting cases). The party seeking removal shoulders the burden of establishing jurisdiction by a reasonable probability. *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57–58 (2d Cir. 2006).

Plaintiff asserts that Defendants have established none of the elements of CAFA—that there is no minimal diversity, that there are fewer than 100 proposed plaintiff class members, and

that the SAC alleges less than $5 million in damages. MTR at 2–3. Furthermore, Plaintiff asserts that the mandatory home-state exception of Section 1332(d)(4) applies here. *Id.* at 3.

First, Defendants have shown by a reasonable probability that there is minimal diversity. CAFA requires only minimal diversity of the parties, which occurs when:

> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2). A corporation is "deemed . . . a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

Here, according to the SAC, Plaintiff is a citizen and resident of New York state. SAC ¶ 1. Plaintiff alleges that all six Hospital Defendants are New York corporations. *Id.* ¶¶ 3–9. Plaintiff also alleges that Michael J. Dowling is a New York resident. *Id.* ¶ 2. The proposed class consists of those "employed by one or more of the Hospital Defendants and thereafter were denied re-employment, hospital privileges, or contractor opportunities based on Defendants' centralized 'do-not-hire,' blacklisting, or group-boycott policies." *Id.* ¶ 249. Plaintiff asserts that Defendants have failed to allege that any class member is a citizen of another state, but acknowledges that, at least following the merger with Nuvance, "a small number of employees will be from Connecticut." MTR at 4.

However, in response, Defendants have provided a declaration from Howard Tuchman, Northwell's Vice President, Head of Workforce Intelligence and overseer of human resources data. *Dinu IV*, ECF No. 17 ("Tuchman Decl.") ¶ 1. *See Smith v. Manhattan Club Timeshare Ass'n, Inc.*, 944 F. Supp. 2d 244, 253 (S.D.N.Y. 2013) (relying on data provided by a defendant's

human resources department to rebut the presumption that CAFA's exceptions applied). Tuchman confirms that since May 7, 2025, the Nuvance health care system has been part of Northwell, leading to Northwell's employ of 8,868 individuals at Connecticut locations. *Id.* ¶ 4. Tuchman also clarifies that in the six years preceding the filing of the SAC, individuals employed by Northwell have resided in all 50 states plus the District of Columbia. *Id.* Specifically, "through the end of November 2025," Northwell's workforce amounted to 171,949 individuals, holding "jobs in various hospitals, facilities, and practices in Connecticut, New Jersey, and Florida, in addition to New York," as well as employees "work[ing] remotely in many states across the United States." *Id.* ¶ 15.

This evidence establishes that there is a reasonable probability that at least one of the putative class members is not a citizen of New York but is "a citizen of a State different from . . . [the New York] defendant[s]." 28 U.S.C. § 1332(d)(2)(A). "Given the size of the proposed class and the fact that it is not limited to New York citizens," then, the Court concludes "that Defendants have met their burden of showing that there is a reasonable probability that at least one class member is not a citizen of New York and thus is a 'a citizen of a State different from . . . defendant.'" *Abdale v. N. Shore-Long Island Jewish Health Sys., Inc.*, No. 13-CV-1238 (JS), 2014 WL 2945741, at *6 (E.D.N.Y. June 30, 2014) (quoting *Blockbuster*, 472 F.2d at 59).

Second, Defendants have also sufficiently established that the putative class numbers at least 100 members. CAFA requires that there be at least 100 members in the proposed class. *See* 28 U.S.C. § 1332(d)(5)(B). Here, the SAC estimates that the class membership numbers approximately 88 individuals. SAC ¶ 250. Plaintiff came to this figure by estimating that Northwell employs 88,000 individuals, and then estimating that "at minimum 0.1% of the workforce (approximately 88 individuals) is impacted." *Id.* ¶ 252.

Defendants, in response, have submitted evidence that Northwell Health actually employed 171,949 individuals in the six years preceding the filing of the SAC. Tuchman Decl. ¶ 6. During this time period, 66,262 former employees were separated from employment, and of those, Northwell fired 18,825 employees. *Id.* ¶ 9. Considering the number of fired employees, Defendants have sufficiently rebutted Plaintiff's estimate and have shown that it is reasonably likely that at least 100 of the 18,825 terminated employees might be members of the proposed class of persons who unsuccessfully applied for employment with a Northwell affiliate following their termination. Courts often credit such human resources data "to satisfy CAFA's numerosity requirement." *Nunez v. JPMorgan Chase Bank, N.A.*, No. 23-CV-7569 (PAE), 2024 WL 244624, at *2 (S.D.N.Y. Jan. 23, 2024) (collecting cases).

Alternatively, using Plaintiff's own formula but applying it to the correct number, 0.1% of total fired Northwell employees during the relevant period equals 188 individuals—more than CAFA's 100 class member threshold. Therefore, the Court determines that Defendants have shouldered their burden as to CAFA's numerosity element.

Finally, there is at least a reasonable probability that the class amount-in-controversy exceeds $5 million. "To satisfy the jurisdictional amount requirement under CAFA, the removing defendant 'must show that it appears to a reasonable probability that the aggregate claims of the plaintiff class are in excess of $5 million.'" *Abdale*, 2014 WL 2945741, at *5 (quoting *Blockbuster*, 472 F.3d at 58) (internal quotation marks omitted). "To determine the amount in controversy, courts first turn to the allegations of the complaint." *Id.* "'Where the pleadings themselves are inconclusive as to the amount in controversy . . . courts may look outside those pleadings to other evidence in the record.'" *Smith v. Manhattan Club Timeshare Ass'n, Inc.*, 944 F. Supp. 2d at 250 (quoting *United Food & Com. Workers Union, Loc. 919, AFL–CIO v.*

*CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994)). "Facts relating to the jurisdictional amount can be challenged by the plaintiff, thereby requiring the defendant to support those facts with a 'competent proof' by a preponderance of the evidence." *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 354 (E.D.N.Y. 2008) (quoting *United Food*, 30 F.3d at 301–02).

Here, the SAC does not demand a specified amount of damages, but does provide an estimated range that "[t]he members of the proposed class have been damaged thereby, in an amount estimated to be above $3 million but under $5 million." SAC ¶ 283. Plaintiff includes an example calculation, and "estimates that at minimum 0.1% of the workforce (approximately 88 individuals)" are members of the class and "[i]f the average additional time spent to locate new employment is 3 months, and the average annual salaries $90,000, this means $30,000 damages per employee, for a total amount of damages for the class equal to $ 2,640,000." *Id.* ¶¶ 251–52. Additionally, Plaintiff alleges approximately $400,000 in her own lost wages, more than $1 million in estimated lost front pay, lost benefits, damage to her professional reputation, and emotional distress damages exceeding $2 million. *Id.* ¶ 243. Plaintiff seeks to treble her damages, which would turn her $3.4 million damages claim into a claim for $10.2 million. *Id.* ¶ 280.

Because Plaintiff clarifies throughout the SAC that the class damages figures are only estimates, *see id.* ¶¶ 251–83, the Court does not take these figures as limitations on the class's damages. Rather, the Court uses Plaintiff's estimates as "information and assumptions . . . creat[ing] a rebuttable presumption" that the jurisdictional amount has not been met. *Commisso v. PricewaterhouseCoopers LLP*, No. 11-CV-5713 (NRB), 2012 WL 3070217, at *4 (S.D.N.Y. July 27, 2012); *see also Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166

F.3d 59, 63 (2d Cir. 1999) (recognizing a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy").

As explained above, Defendants' evidence indicates that Northwell employed 171,949 individuals in the six years preceding the filing of the SAC, and terminated 18,825 of those employees. Tuchman Decl. ¶¶ 6, 9. Tuchman also establishes that "[f]or the individuals terminated . . . the average annualized wages at the time of termination were about $85,000.00." *Id.* ¶ 10. Tuchman also calculates that three months of wage loss for these individuals would amount to $21,250.00 per person, and the values of three months of alleged lost benefits would amount to $4,250.00 per person. *Id.* ¶ 11. Therefore, Tuchman estimates that "the conservative aggregate wages and benefits for the 0.1% putative class (excluding the Plaintiff) based on the assumption of inability to find work for a 3-month period totals $4,360,500.00." *Id.* When combined with Plaintiff's asserted damages—which, as the Court has noted, by themselves substantially exceed the $5 million threshold—the damages sought in this lawsuit easily surpass CAFA's $5 million threshold. *Id.* ¶¶ 12–13.

"Once the party invoking jurisdiction has made a good faith representation as to the amount in controversy, the burden shifts to the opposing party, who must demonstrate 'to a legal certainty' that the claim does not add up to $5 million." *Metcalf v. TransPerfect Translations Int'l, Inc.*, 632 F. Supp. 3d 319, 326 (S.D.N.Y. 2022) (quoting *Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust C. of Chicago*, 93 F.3d 1064, 1070 (2d Cir. 1996)). And although "the doubt should be resolved in favor of the plaintiff's pleadings" "[w]here the damages sought are uncertain," any post-removal attempt by Plaintiff to limit damages below the $5,000,000 threshold will prove unavailing. *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994). The Second Circuit has made "clear that a plaintiff cannot seek to deprive a

federal court of jurisdiction by reducing her demand . . . once the jurisdictional threshold has been satisfied." *Yong Qin Luo v. Mikel*, 625 F.3d 772, 776 (2d Cir. 2010); *see also L. Offs. of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 F. App'x 622, 625 (2d Cir. 2012) (applying *Yong Qin* to a CAFA case). And "[r]emand is appropriate where jurisdiction is doubtful." *Video Connection of Am., Inc. v. Priority Concepts, Inc.*, 625 F. Supp. 1549, 1550 (S.D.N.Y. 1986).

Plaintiff has no factual refutation to Defendants' argument that, using her own estimates, class damages at a minimum exceed $4 million. To keep the number under $5 million, she argues (without citing to any caselaw) that her own damages should not be aggregated with the damages of the other class members when calculating the jurisdictional amount sought. *Dinu IV*, ECF No. 19 at 4. But this is nonsense. The Court must aggregate the damages of Plaintiff and the class members. Plaintiff contends that all members of the class suffered the same wrong, so any effort by Plaintiff to place herself separate and apart from the class strongly suggests that she would not be an adequate class representative. *See* SAC ¶ 282 ("The anticompetitive wrongdoing done by the Hospital Defendants against Ms. Dinu, and the resulting economic harm, has been similarly experienced by all members of the proposed class."). CAFA provides that to "determine whether the matter in controversy" exceeds the required sum, "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6). Additionally, "class members" include "persons (named or unnamed) who fall within the definition of the proposed or certified class." 28 U.S.C. § 1332(d)(1)(D).

Therefore, the Court cannot and will not exclude Plaintiff's demand for damages from the aggregation of the class's damages: Plaintiff purports to be a member of the class, with her damages arising from same conduct as has affected the other class members. *See* SAC ¶ 254. Indeed, in alleging the typicality of Plaintiff's claims as to those of the class, she states that her

"claims are typical of the claims of the Class because she, like all Class members, was subjected to Defendants' uniform blacklisting and refusal-to-deal policies, suffered loss of employment opportunities, had hospital privileges revoked, and incurred economic and reputational injury as a result of the same unlawful anticompetitive conduct." *Id.* Given the amount of damages Plaintiff alleges she is due, there is every reason to believe that Defendants' calculation of damages for the 188 class members—of whose claims Plaintiff's are typical—is woefully low.

Plaintiff cannot stand on her pleaded figures because "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013). Plaintiff thus cannot purport to limit the amount that other class members can seek by way of damages simply by asserting that she will not seek more than $5 million on their behalf—while seeking over $9 million for herself. *See* MTR at 5. Nor can Plaintiff get around this element by arguing that some of her claims (specifically the first cause of action) are brought in her individual status only, and not on behalf of the class. *See id.* She is stuck with her representation that her claims and damages are "typical" of those of the absent class members—and her second and third causes of action on their face assert claims on behalf of persons in addition to herself (see., e.g., Plaintiff's third cause of action—"tortious interference with Ms. Dinu's and the proposed class['s] prospective contractual relations"—which clearly seeks damages for both Plaintiff and the class). SAC ¶¶ 285–91 ("Ms. Dinu and the proposed class were damaged thereby.").

Therefore, all three of CAFA's jurisdictional elements—minimum diversity, numerosity, and amount-in-controversy—are satisfied by a reasonable probability.

However, the home state and discretionary exceptions to CAFA jurisdiction doom removal.

### B. CAFA's Home-State and Discretionary Exceptions Apply Here

Even when CAFA's jurisdictional elements are met, CAFA provides enumerated exceptions to CAFA jurisdiction. 28 U.S.C. §§ 1332(d)(3), 1332(d)(4)(B).

"[O]nce the general requirements of CAFA jurisdiction are established, plaintiffs have the burden of demonstrating that remand is warranted on the basis of one of the enumerated exceptions." *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010). These exceptions "are designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Sorrentino*, 588 F. Supp. 2d at 355 (quoting *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 682 (7th Cir. 2006)).

First, under the "home-state exception," a district court *must* decline to exercise jurisdiction over a class action in which both two-thirds or more of the putative class members and the primary defendants are citizens of the state in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(B).

Second, under the "discretionary exception," CAFA allows district courts, "in the interests of justice and looking at the totality of circumstances" to decline to exercise jurisdiction "over a class action in which greater than one-third but less than two-thirds" of the putative class members, and the primary defendants, "are citizens of the State in which the action was originally filed," after considering certain enumerated factors. *Id.* § 1332(d)(3).

Here, it is reasonably likely that the home-state exception applies. But even if it does not, there can be no question that the discretionary exception applies.

First, regarding the home-state exception: Plaintiff alleges that all Defendants, including Dowling, Northwell, and all Hospital Defendants, are New York corporations, located in New York. *See* SAC ¶¶ 2–9. And the evidence supports a conclusion that over two-thirds of the putative class members could be citizens of New York: Plaintiff also alleges that, except for the Nuvance facilities in Connecticut (which, according to Tuchman, employs 8,868 individuals (approximately 5.16%) of Northwell's 171,949 employees, Tuchman Decl. ¶¶ 4, 6), the class members are healthcare professionals working in the New York region, "in localities and communities within this region of New York State." SAC ¶ 48. Of course, the Court cannot ignore the fact that people who live in Connecticut and New Jersey and even Pennsylvania might well work at a New York-based Northwell health care facility. But Northwell's Tuchman asserts that, during the six years preceding the filing of the SAC, only "12.7% of the current and former workforce resided outside of New York State." Tuchman Decl. ¶ 8. If this is true, it is unlikely that at least two-thirds of the people from which the purported class would be drawn live outside of New York.

Although Tuchman emphasizes that Northwell "does not maintain data and analytics as to the citizenship of the workforce," and argues that the 12.7% figure "is based on addresses provided by the individuals either at the time of hire and/or updated if the individual moved and/or provided subsequent addresses," his argument—which is that mailing addresses do not necessarily reflect domicile, which is the touchstone of citizenship—is not based on any evidence at all. *Id.* So while the Court credits Tuchman's data, it does not credit his argument regarding residency.

Northwell's HR data actually supports the inference that over two-thirds of the class members would be New York state citizens, because it includes information—the addresses

given by the employees themselves—tending to show that 87.3% of Northwell's "current and former workforce resided" within New York state. *Id.*

Moreover, the Court need not determine with certainty that two-thirds of the class members are New York citizens, but rather may "simply make reasonable assumptions about the makeup of the putative class" when determining citizenship for CAFA's exceptions. *Commisso*, 2012 WL 3070217, at *4. The Court can make a determination that "it is reasonably likely that more than two-thirds of the putative class members of the proposed class" are New York citizens when Plaintiff has alleged that the vast majority of her fellow class members work in New York and Defendants' own data shows that over 87% of its employees provided their employer with a New York address—even though Plaintiff "ha[s] not provided evidence, in the form of an affidavit or otherwise, establishing such citizenship." *Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 80 (S.D.N.Y. 2006). *See also Weider v. Verizon N.Y., Inc.*, No. 14-CV-7378 (FB), 2015 WL 3474102 (E.D.N.Y. June 2, 2015) (assuming the citizenship requirement was met because employer was a citizen of New York and class members performed work solely for New York accounts).

As such, the Court reasonably assumes that two-thirds or more of the Plaintiff class comprises citizens of New York. It is undisputed that Defendants are citizens of New York, and it is undisputed that no other class action related to these factual allegations has ever been filed. Therefore, the mandatory home-state CAFA exception of 28 U.S.C. § 1332(d)(4)(B) applies, and the Court must remand the action to state court.

Furthermore, even if the mandatory exception to CAFA did not apply, the Court concludes that, in the interests of justice and looking at the totality of circumstances, the

discretionary exception applies, and remand is appropriate. The discretionary exception to CAFA jurisdiction provides that:

> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of—
>
> [1] whether the claims asserted involve matters of national or interstate interest;
>
> [2] whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
>
> [3] whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
>
> [4] whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
>
> [5] whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
>
> [6] whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3). "The plaintiff need not satisfy all factors, rather a balancing test should be applied taking into consideration the 'totality of the circumstances.'" *Sorrentino*, 588 F. Supp. 2d at 359.

Defendants do not even address this exception in their opposition brief—no doubt because, whatever their data show about mandatory remand, they plainly support discretionary remand, unless the listed factors weigh in Defendants' favor. *See* ECF No. 18. They do not.

First, it is clear that the claims asserted are not of national or interstate interest—rather, they relate to the employment practices of a New York-based healthcare system. Second, all of Plaintiff's claims arise under New York state law, including New York's antitrust statute and New York contract law. *See* SAC ¶¶ 265–91. These two factors weigh heavily in favor of remand.

Third, while the SAC does plead numerosity and amount-in-controversy figures just below CAFA's jurisdiction, it is not clear that the figures were pled in bad faith to avoid federal jurisdiction, or were unreasonable estimations. *See* SAC ¶¶ 250–51 (estimating 88 class members with class damages of $2,640,000). Indeed, Defendants' estimations, which have the benefit of being based on human resources data, are—although above the jurisdictional bar—not all that far off from Plaintiff's estimates. *Compare id. with* Tuchman Decl. ¶ 11 (estimating 171 class members and $4,360,500 in class damages). Therefore, the third factor is neutral.

The fourth factor is neutral or favors remand. Westchester County Supreme Court, where Plaintiff brought this action, does not bear a "distinct" nexus to a lawsuit brought against health care facilities located throughout the New York City greater metropolitan area and the Hudson Valley. However, several of the hospitals involved in this lawsuit, including Phelps Hospital (where Plaintiff worked and whose records and employees are highly relevant to her claims) and Northern Westchester Hospital (which is listed as a Defendant) are located in the county. And Northwell has recently acquired Nuvance, which as discussed, is located throughout Connecticut—a state that borders Westchester County. SAC ¶ 128; Tuchman Decl. ¶ 4. That gives Westchester County as strong an interest as any other forum. It certainly has a stronger

interest than the Southern District of New York, because the majority of the named Defendant Hospitals—including Long Island Jewish Medical Center, North Shore University Hospital, South Shore University Hospital, and Staten Island University Hospital—are not located in this District. SAC ¶¶ 5–9.

The fifth factor favors remand because Northwell's own data support the conclusion that there are more citizen class members located in the State of New York than in any other single State. *See* Tuchman Decl. ¶ 8 (stating that Northwell's human resources data shows that 87.3% "of the current and former workforce reside" within New York, or at least gave their employer a New York address).

Sixth, despite Plaintiff's many individual lawsuits arising out of her personal situation, there is no indication that another class action related to these facts has been brought—which weighs in favor of remand.

In conclusion, the factors all either weigh in favor of remand or are neutral. Therefore, remand under the discretionary exception of 28 U.S.C. § 1332(d)(3) is proper. Based on either the home-state or discretionary exception, the Court directs the Clerk of Court to remand *Dinu IV* to the Westchester County Supreme Court.

### C. Plaintiff's Request for Attorney's Fees Related to Removal Are Denied

The Court denies Plaintiff's request for attorney's fees related to Defendants' removal. *See* MTR at 6–7. The court has discretion to award fees to the party seeking remand under 28 U.S.C. § 1447(c). However, the Supreme Court has held that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, it is clear that Defendants' arguments were not unreasonable or frivolous. Defendants provided sound arguments and evidence supporting that the putative class action satisfied CAFA's minimum diversity, numerosity, and damages requirements. *See Dinu IV*, ECF No. 18; *supra* Section I(A). Furthermore, Defendants reasonably argued that Plaintiff did not bear her burden in establishing CAFA's exceptions, even though the Court ultimately determined that such exceptions applied. Therefore, the Court declines to award Plaintiff attorney's fees related to Defendants' removal of *Dinu IV*.

## II. Defendants' Motions in *Dinu V* Are Granted in Part and Denied in Part

Before the Court is Defendants' Motion to Dismiss, or in the alternative, to Strike, Plaintiff's Amended Complaint, together with a Motion for Sanctions. *Dinu V*, ECF No. 58; MTD.

The Court grants in part and denies in part Defendants' motion to strike and/or dismiss Plaintiff's Amended Complaint. And while the Court declines to impose case-terminating sanctions against Plaintiff, the Court does impose a narrow litigation bar against Plaintiff and her counsel that limits the initiation of any new cases arising from Plaintiff's employment with and litigation against Phelps and Northwell.

### A. Motion to Dismiss and Strike

Defendants move to dismiss Plaintiff's Amended Complaint on numerous grounds. First, the Court determines that dismissal under Rule 8 is unwarranted. Next, the Court grants Defendants' motion to strike allegations relating to Defendants' counsel's conduct in *Dinu I* and *Dinu II* from the Amended Complaint under Rule 12(f). Accordingly, the Court dismisses Plaintiff's claims to the extent that they arise from these stricken allegations. This includes the partial dismissal of Plaintiff's third and fourth causes of action (Plaintiff's federal and state

retaliation claims), and dismissal in their entirety of Plaintiff's fifth and sixth causes of action, brought under 42 U.S.C. §§ 1985 and 1986, respectively.

Next, the Court concludes that Plaintiff's federal claims under the ADA and Title VII—counts one, two, and three—are not barred on exhaustion and timeliness grounds.

Finally, the Court denies dismissal of count four—Plaintiff's NYSHRL claim—on multiple grounds.

**i. Defendants' Motion for Dismissal Under Rule 8 Is Denied**

Defendants request dismissal of Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 8, because it does not contain a "short and plain statement" of "simple, concise, and direct" allegations. MTD at 14–20. Defendants note that the substance of Plaintiff's Amended Complaint spans 81 pages and 365 numbered paragraphs. *Id.* at 15 (citing Am. Compl.). In addition, Plaintiff has also appended other documents, including a "Chronology of Relevant Events" to her unduly prolix Amended Complaint. Am. Compl. at 77–81. Defendants also raise that Plaintiff has filed multiple versions of her Complaint in this action. MTD at 16.

Federal Rule of Civil Procedure 8 requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, "[e]ach allegation must be simple, concise, and direct. No technical form is required." Fed. R. Civ. P. 8(d)(1). "When a complaint fails to comply with these requirements, the district court has the power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant or immaterial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). "[H]owever, dismissal for violation of Rule 8 is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Celli v. Cole*, 699 F. App'x 88, 89 (2d Cir. 2017) (internal

citations and quotation marks omitted). *See also Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir. 1988) (vacating a dismissal under Rule 8 without leave to amend because "[d]espite its length, however, [plaintiff's] complaint is neither vague nor incomprehensible, and it clearly pleads at least some claims that cannot be termed frivolous on their face"). "Further, if the court dismisses the complaint for failure to comply with Rule 8, it should generally give the plaintiff leave to amend." *Simmons*, 49 F.3d at 86–87. "This is especially true when the complaint states a claim that is on its face nonfrivolous." *Id.* at 87.

Nevertheless, "Rule 8 'places the burden squarely upon' Plaintiff to succinctly state their claims, and it is neither Defendants' nor the Court's duty to 'sift through the [c]omplaint and guess which factual allegations support which claims.'" *Washburn v. Kingsborough Cmty. Coll.*, No. 20-CV-395 (DLI), 2022 WL 843733, at *2 (E.D.N.Y. Mar. 22, 2022) (quoting *Infanti v. Scharpf*, No. 06-CV-6552 (ILG), 2008 WL 2397607, at *2 (E.D.N.Y. June 10, 2008)). "[R]epeated failure to comply with Rule 8," especially once a plaintiff has been warned of their prior non-compliance, "warrants dismissal." *See id.* at *3.

Here, Plaintiff's Amended Complaint is bloated, repetitive, and includes a number of frivolous and inappropriate allegations. However, the Amended Complaint does give Defendants notice of the claims that Plaintiff asserts, and connects the alleged facts to the claims. For example, Plaintiff has alleged facts related to sexual harassment and disability discrimination that clearly make up her federal and state discrimination claims (counts one through four). *See* Am. Compl. ¶¶ 17–21, 38 (pleading flirtations and sexually inappropriate conduct against Plaintiff by her supervisor, as well as inappropriate comments regarding Plaintiff's "brain-surgery related disabilities"). In other words, Plaintiff's Amended Complaint, although prolix, is not so

incomprehensible, vague, or unintelligible as to warrant dismissal under Rule 8. *See Salahuddin*, 861 F.2d at 43.

The Second Circuit has cautioned that, when a pleading "though prolix, g[ives] the defendants notice of the substance of certain claims that were not frivolous on their face, a with-prejudice dismissal of even a subsequent similar amended complaint would be inappropriate." *Simmons*, 49 F.3d at 87. Indeed, "dismissal based on Rule 8" is appropriate "only for egregious shortcomings." *DeMarco v. Nat'l Collector's Mint, Inc.*, 229 F.R.D. 73, 76–77 (S.D.N.Y. 2005). Therefore, the Court declines to dismiss Plaintiff's Amended Complaint under Rule 8.

**ii. Defendants' Motion to Strike Under Rule 12(f) Is Granted Regarding Plaintiff's Allegations of Retaliatory Litigation Tactics**

In the alternative to dismissal under Rule 8, Plaintiff requests that the Court strike the entirety of the Amended Complaint for containing "immaterial and scandalous matter"—particularly the allegations related to "counsel and [the] extensive litigation-history narrative"—under Federal Rule of Civil Procedure 12(f). MTD at 13, 18.

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "To prevail on a motion to strike, a party must demonstrate that '(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant.'" *S.E.C. v. Lee*, 720 F. Supp. 2d 305, 340 (S.D.N.Y. 2010) (quoting *Roe v. City of N.Y.*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)). In considering a motion to strike, "courts typically can't consider materials outside the pleadings." *Bensky v. Indyke*, 743 F. Supp. 3d 586, 596 (S.D.N.Y. 2024).

The Court recognizes that "[m]otions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *Kehr ex rel.*

*Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 829 (S.D.N.Y. 2008) (internal quotation marks and citation omitted). Motions to strike will only be granted when "there is a strong reason for so doing." *Hargett v. Metro. Transit Auth.*, 552 F. Supp. 2d 393, 404 (S.D.N.Y. 2008) (internal quotation marks and citation omitted). But that does not make such motions inappropriate, especially in circumstances like this one, where the Court has already warned counsel about the inclusion of frivolous and utterly unwarranted allegations in a pleading. *See Muller v. NYC Motorcars of Freeport Corp.*, No. 20-CV-1497 (NJC), 2024 WL 3431957, at *5–6 (E.D.N.Y. July 16, 2024) (granting motion to strike in part because Defendant was "warned of the consequences of noncompliance").

Here, as Plaintiff's counsel was warned, the Court strikes all of Plaintiff's allegations that relate to Defendants' counsel's conduct in *Dinu I* and *Dinu II*. At the September 3, 2025 conference, the Court warned Plaintiff's counsel that if Plaintiff continued to include "allegations related to other cases that are alleged to be part of alleged retaliation," that a motion to strike "would likely be appropriate" unless Plaintiff was able to demonstrate, with citation to competent authority, that the assertion of defenses to a lawsuit by counsel could qualify as "retaliation" by an employer (counsel's client) against a suing employee. Sept. 3 Conf. at 22:19–22. Nevertheless, Plaintiff has included in her Amended Complaint over one hundred allegations related to the litigating of *Dinu I* and *Dinu II* in state court. *See* Am. Compl. ¶¶ 135–310. In fact, Plaintiff mentions Traycee Ellen Klein, counsel for Defendants in this action, approximately 108 times throughout the Amended Complaint. *See* Am. Compl. This is nearly the same number of times Plaintiff mentions Glennon—her former supervisor and the individual who allegedly discriminated against her—whom she references approximately 109 times in her Amended

Complaint. *See id.* And while the Court demanded that Plaintiff's counsel justify the inclusion of these allegations with citations to relevant authority, the Court sees none.

The Court concludes that these allegations must be stricken because they are scandalous, frivolous, and strike at the heart of the attorney-client relationship and the ability of lawyers to represent their clients. Plaintiff calls into question Defendants' counsel's professional ethics and honesty. *See* Am. Compl. ¶¶ 127, 137, 141, 216–19. These references constitute "scandalous allegation[s] . . . that reflect[] unnecessarily on the defendant's moral character." *Kumaran v. Northland Energy Trading, LLC*, 762 F. Supp. 3d 322, 330–31 (S.D.N.Y. 2025) (quoting *Cabble v. Rollieson*, No. 04-CV-9413 (LTS) (FM), 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006)).

Moreover, the alleged "abusive" and "retaliatory" litigation tactics Plaintiff alleges consist entirely of Defendants' counsel taking positions on behalf of their clients in *Dinu I* and *Dinu II* that were opposed to Plaintiff's position. *See* Am. Compl. ¶¶ 137, 140. These positions include asserting what appears to be standard service of process and personal jurisdiction defenses. *See id.* ¶¶ 165–81. Plaintiff identifies no basis in the law to support that taking these positions constitutes retaliation against Plaintiff by her employer, and it is likely that no evidence about the allegations regarding Defendants' counsel's litigation tactics would be admissible due to attorney-client privilege and the attorney work-product doctrine.

The Court had previously asked Plaintiff's counsel to identify cases "where an attorney's conduct representing an employer . . . could constitute retaliation," and specifically for cases that "stand for the proposition that simply asserting defenses available to a party, like lack of service, constitutes retaliation under Title VII." Sept. 3 Conf. at 12:6–25. Plaintiff's counsel was unable to identify any specific cases. *See id.* at 13. The Court subsequently warned Plaintiff's counsel that he had to include a legal basis for his allegations that Defendants' counsel's litigation tactics

amounted to retaliation, or that otherwise the Court might strike these allegations and consider sanctions. *Id.* at 26:11–13:2.

Counsel has still utterly failed to present any legal basis for these allegations. In opposing dismissal of her "retaliation based on litigation abuse" claims, Plaintiff only cites cases that have nothing to do with retaliatory litigation. ECF No. 65 at 7 (citing *Hicks v. Baines*, 593 F.3d 159, 165–66 (2d Cir. 2010) (analyzing a claim that employees faced retaliatory conduct from their direct supervisor); *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (analyzing retaliatory conduct by an employee's immediate supervisors)). Plaintiff has also failed to plead any facts tending to show that the conduct of Defendants' lawyers in litigation could be imputed to Defendants as retaliation. *See id.* Instead, Plaintiff would have this Court find an employer liable for retaliation simply for defending itself in court; that is not the law. As such, the Court strikes all of Plaintiff's allegations of retaliatory litigation tactics and allegations regarding Defendants' counsel's conduct.

Furthermore, Plaintiff's claims, to the extent they arise from these now-stricken allegations of retaliatory litigation, are dismissed. This dismissal includes Plaintiff's third and fourth causes of action in part, and Plaintiff's fifth and sixth causes of action in their entirety. Plaintiff's third cause of action—retaliation in violation of Title VII and the ADA—is premised in part on Plaintiff's allegation that Defendants "direct[ed] and allow[ed] its attorneys to engage in ongoing abusive and illegitimate litigation tactics against her." Am. Compl. ¶ 336. Similarly, Plaintiff's fourth cause of action—retaliation in violation of NYSHRL—is similarly premised in part on allegations related to Defendants' counsel. *See, e.g.*, *id.* ¶¶ 127–33.

Plaintiff's fifth cause of action—conspiracy to deprive her of her civil rights in violation of 42 U.S.C. § 1985—arises solely and entirely from Plaintiff's allegations of "litigation abuse"

as she alleges that after she filed her *Dinu I* lawsuit, "Defendants Northwell, Phelps Memorial and, upon information and belief, Defendant Dowling, conspired among themselves, including by using their counsel, to impeding, hindering, obstructing, or defeating the due course of justice with intent to deny Ms. Dinu the equal protection of the laws, and to injure her." *Id.* ¶ 349. Again, Plaintiff seems to argue that she was denied "the due course of justice" and "the equal protection of the laws" if the parties she sued defended themselves. *Id.* That is not a viable claim for relief.

Finally, Plaintiff's sixth cause of action—violation of 42 U.S.C. § 1986—is also premised entirely upon Defendants' failure to prevent "the wrongdoing of [Dowling's] and the other Defendants' attorneys," when Defendants knew "how Ms. Klein was defending both the *Dinu I* and *Dinu II* lawsuits." *Id.* ¶¶ 355, 360.

Therefore, to summarize, the Court dismisses all claims to the extent they arise from Plaintiff's allegations of retaliatory litigation tactics and references to opposing counsel. This results in the partial dismissal of Plaintiff's third claim of relief—retaliation under Title VII and the ADA—and fourth claim of relief—retaliation under the NYSHRL—to the extent that they arise from the stricken allegations, and the dismissal of Plaintiff's fifth and sixth claim brought under 42 U.S.C. §§ 1985 and 1986 in their entirety.

The motion to strike the entire complaint, however, is denied. Plaintiff's pleading includes gender and disability-based discrimination and retaliation claims predicated on facts predating and largely unrelated to these troublesome allegations of misbehavior arising out of lawyers doing what we expect lawyers to do—defending their clients zealously within the bounds of the law. It is to those allegations that the Court now turns.

### iii. Defendants' Motion to Dismiss Plaintiff's ADA and Title VII Claims—Claims One, Two, and Three—on Exhaustion and Timeliness Grounds Is Denied

Defendants argue that Plaintiff's Title VII and ADA claims were not exhausted because Plaintiff's EEOC charge was not verified and included untimely allegations (more than 300 days old) at the time the charge was filed. MTD at 21–25. This aspect of the motion to dismiss is denied.

"Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (quotation marks omitted). "The scheme of redress for employment discrimination under Title VII . . . requires a complainant to file a 'charge' with the [EEOC] a certain time after the conduct alleged, 42 U.S.C. § 2000e–5(e)(1), and to affirm or swear that the allegations are true, § 2000e–5(b)." *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 108–09 (2002) (cleaned up). Specifically, Section 2000e-5(b) requires that "[c]harges shall be in writing under oath or affirmation" and "be in such form as the [EEOC] requires." 42 U.S.C. § 2000e–5(b).

The EEOC's regulations require that a "charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. The regulations also define "verified" as meaning "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a).

The regulations also allow a "charge that any person has engaged in or is engaging in an unlawful employment practice within the meaning of title VII [or] the ADA . . . [to] be made by or on behalf of any person claiming to be aggrieved." 29 C.F.R. § 1601.7. Similarly, a "charge on

behalf of a person claiming to be aggrieved may be made by any person, agency, or organization." *Id.* "During the Commission investigation, Commission personnel shall verify the authorization of such charge by the person on whose behalf the charge is made." *Id.* Furthermore, the regulations "permit a later verification to 'relate back' and cure an initial failure to verify, so long as a proper verification is ultimately obtained." MTD at 22 (citing 29 C.F.R. § 1601.12(b)).

Here, Defendants' contention that the Plaintiff's EEOC charge was not properly verified is meritless. Plaintiff's November 2, 2022 EEOC charge is filed at ECF No. 60-42. Plaintiff's charge alleges sex-based and disability-based discrimination, as well as retaliation, dating from around 2016 to October 20, 2022.[1] *Id.* Under the sentence "I declare under penalty of perjury that the above is true and correct" and label "signature of complainant," the charge is electronically signed ("/s/ Paula Dinu"). *Id.* That is sufficient to satisfy the verification requirement. Defendants cite no caselaw, and the Court finds none, to suggest that an electronic signature of an EEOC charge is insufficient—indeed, such a result would be implausible considering the ubiquity of the electronic signatures today. Therefore, as required by the regulation's definition of "verified," Plaintiff's charge is signed "in writing under penalty of perjury." 29 C.F.R. § 1601.3(a).

Defendants assert that Plaintiff's November 2, 2022 charge filed with the EEOC lacked verification by Plaintiff—specifically, that Plaintiff's counsel, rather than Plaintiff, electronically

---

[1] Although this document is not incorporated into the complaint, it is nonetheless appropriate for the Court to consider it on this motion. *See, e.g.*, *Windley/Edwards v. NYC Dep't of Educ.*, No. 24-CV-2875 (VEC) (GS), 2025 WL 2615504, at *4 (S.D.N.Y. July 15, 2025), *report and recommendation adopted*, 2025 WL 2463542 (S.D.N.Y. Aug. 27, 2025) ("It is equally well settled that, in deciding a motion to dismiss in an employment discrimination action, a district court may consider the plaintiff's previously filed charge with the EEOC.") (collecting cases).

signed the charge. *Id.* at 22. However, there is no evidence that Plaintiff was not the one to have signed her EEOC charge. *See* ECF No. 60-42. Plaintiff's counsel contends that it was Plaintiff that "declare[d] under penalty of perjury the accuracy" of the charge. Diederich Decl. ¶ 20. And, indeed, Plaintiff's electronic signature appears on the charge. ECF No. 60-42. Defendants' arguments to the contrary are unsupported.

Defendants next contend that Plaintiff's allegations of Glennon's sexual harassment and disability-related comments are time-barred. MTD at 24. "Generally, an EEOC charge must be filed within 180 days of the alleged discriminatory event; the period is extended to 300 days in states like New York that have 'local administrative mechanisms for pursuing discrimination claims.'" *Singh v. Universal Prot. Servs., LLC*, No. 24-CV-4792 (JPO), 2025 WL 1919553, at *2 (S.D.N.Y. July 11, 2025) (quoting *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023)); *see* 42 U.S.C. § 2000e-5(e)(1). This requirement "functions as a statute of limitations in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999) (internal citation omitted).

However, the Supreme Court has long established that—while a party's allegations of a "discrete retaliatory or discriminatory act," such a "termination, failure to promote, denial of transfer, or refusal to hire," must have occurred within the 300-day time period to be actionable—"[h]ostile environment claims are different in kind." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 114–15 (2002). Because hostile environment claims by "[t]heir very nature involves repeated conduct," that may span years, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment"—

including conduct that occurred prior to the 300-day period preceding the filing of the charge—"may be considered by a court for the purposes of determining liability." *Id.* at 115–17.

Here, Plaintiff's EEOC charge was filed on November 2, 2022. ECF No. 60-42. Therefore, any discrete employment action alleged to have occurred more than 300 days prior to the filing of this charge—that is, prior to January 6, 2022—is untimely. However, the relevant discrete actions here—specifically, Plaintiff's May 2, 2022 demotion—are timely, as Defendants acknowledge. MTD at 25.

Furthermore, all of Plaintiff's allegations about events prior to January 6, 2022, clearly relate to her hostile work environment claim—a form of gender discrimination. *See* Am. Compl. ¶¶ 17–33; *id.* ¶ 23 ("This hostile work environment created by Mr. Glennon, based upon Ms. Dinu's disabilities and gender, continued into, and increased during, 2020 and 2021 and into 2022."). For example, Plaintiff alleges that Glennon engaged in "unwanted flirtatious" and "sexually inappropriate" conduct. *Id.* ¶ 18. Therefore, even if this conduct predates the 300-day period, the Court can consider it as evidence of a longer-standing problem that created a hostile work environment.

Finally, Defendants argue that Plaintiff's allegations regarding Defendants' failure to accommodate and her January 13, 2023 termination were never exhausted, because these events occurred after she filed her November 2, 2022 EEOC charge. MTD at 11, 24. Defendants note that Plaintiff claims to have filed a new, "related" charge to the EEOC on October 16, 2023, which includes allegations regarding Plaintiff's termination. *Id.* at 24–25. However, Defendants argue that this supplemental charge has no EEOC charge number, was never sent to Plaintiff's employer, Phelps, and is thus not part of the notice of right to sue that serves as the predicate for this lawsuit. *Id.*

Regarding Plaintiff's claims arising from the alleged failure to accommodate and Plaintiff's termination, a "district court may hear . . . Title VII claims that . . . are based on conduct subsequent to the EEOC charge which is reasonably related to those alleged in the EEOC charge." *Cooper v. Xerox Corp.*, 994 F. Supp. 429, 432 (W.D.N.Y. 1998) (internal citation and quotation marks omitted). The Second Circuit has "long recognized that in certain circumstances it may be unfair, inefficient, or contrary to the purposes of the statute to require a party to separately re-exhaust new violations that are reasonably related to the initial claim." *Duplan v. City of New York*, 888 F.3d 612, 622 (2d Cir. 2018) (internal citation and quotation marks omitted). Specifically, "if a plaintiff has already filed an EEOC charge, [the Second Circuit has] been willing to assume that the exhaustion requirement is also met for a subsequent claim 'alleging retaliation by an employer against an employee for filing an EEOC charge.'" *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003)).

The case at hand is alleged to be one of those "paradigmatic case[s] for which the 'reasonably related' doctrine was adopted," where "retaliation [allegedly] occurs while the EEOC charge is still pending before the agency." *Id.* at 622. Here, Plaintiff alleges that approximately a week after she filed her EEOC charge, on November 10, 2022, she unsuccessfully requested "a transfer to a different Northwell facility to accommodate her psychiatrically-diagnosed acute stress disorder." Am. Compl. ¶¶ 174, 319. Plaintiff alleges that this refusal to transfer was retaliatory. *Id.* ¶ 243. Additionally, Plaintiff also alleges that her January 13, 2023 termination constituted retaliation in response to Plaintiff having complained about Glennon's harassment and discrimination. *See id.* ¶¶ 207–09. Therefore, this Court can clearly consider Plaintiff's claims arising from these allegations, because they are "reasonably related" to those claims alleged in her November 2, 2022 EEOC charge. *See Duplan*, 888 F.3d at

622. The Court may do so without even considering the validity of Plaintiff's September 22, 2023 supplemental EEOC charge, which Plaintiff provided to the EEOC investigator on October 16, 2023. Am. Compl. ¶¶ 205–07.

In conclusion, the Court determines that Plaintiff's EEOC charge, in both its verification and timeliness, is not deficient, and Plaintiff's federal harassment, discrimination, and retaliation claims—counts one through three—are thus properly exhausted.[2] The Court denies Plaintiff's motion to dismiss Plaintiff's federal claims on these grounds.

**iv. Defendants' Motion to Dismiss Plaintiff's Fourth Claim Under the NYSHRL Is Denied**

Defendants move to dismiss Plaintiff's state discrimination claim on multiple grounds. Considering these grounds in turn, the Court first determines that Plaintiff's NYSHRL claim is not barred by the doctrine of election of remedies. Second, the Court denies Defendants' request for the Court to decline to exercise supplemental jurisdiction over the NYSHRL claim. Third, the Court considers the merits of the claim and determines that at this stage, Plaintiff has sufficiently alleged her discrimination, retaliation, and aiding and abetting claims under the NYSHRL—to the extent her claim does not arise from stricken allegations.

**1. Defendants' Motion to Dismiss Plaintiff's NYSHRL Claim on the Basis of Election of Remedies Is Denied**

Defendants argue that Plaintiff's NYSHRL claim is barred by New York Executive Law

---

[2] The Court notes that Defendants do not appear to move to dismiss Plaintiff's first, second, and third claims, brought under the ADA and Title VII, on their merits. In their motion to dismiss memorandum, in reference to Plaintiff's federal claims, Defendants briefly state in a header that "[e]ven if exhaustion were assumed, Plaintiff fails to plausibly allege that sex or disability motivated the termination." MTD at 25. However, the brief continues from that header to dispute only whether Plaintiff's claims were exhausted, and does not raise any facts or law to argue that Plaintiff's federal discrimination claims failed on their merits. *Id.* Accordingly, the Court does not construe Defendant's motion as properly moving for dismissal of Plaintiff's first, second, or third claim on their merits.

§ 297(9) ("Section 297(9)") because Plaintiff elected the administrative forum, rather than this judicial forum, by filing a complaint with the New York State Division of Human Rights ("NYSDHR"). MTD at 26. Defendants assert that Plaintiff elected dual filing of her November 2, 2022 EEOC charge such that her charge was also filed with the NYSDHR. *Id.* (citing ECF No. 60-42).

Section 297(9) provides a right of action against unlawful discriminatory practices. N.Y. Exec. Law § 297(9). Section 297(9) applies, *inter alia*, to employment discrimination. N.Y. Exec. Law § 291(1). Section 297(9) specifically provides that

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . and such other remedies as may be appropriate . . . unless such person had filed a complaint hereunder or with any local commission on human rights.

"Thus, by the terms of the statute and code," NYSHRL claims "once brought before the NYSDHR, may not be brought again as a plenary action in another court." *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002). "Furthermore, once a plaintiff brings a case before the NYSDHR, he or she may appeal only to the Supreme Court of State of New York." *Id.* (citing N.Y. Exec. Law § 298). These "election-of-remedies provisions at issue here apply to federal courts as well as state." *Id.* (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)).

However, electing to dual file a charge with both the EEOC and the NYSDHR does not constitute an election of remedies for purposes of this state law doctrine. *See Douglas v. Naik Consulting Grp., P.C.*, No. 24-CV-7237 (ER), 2025 WL 2042430, at *5 (S.D.N.Y. July 21, 2025) (denying dismissal of NYSHRL claims on election of remedies grounds when the plaintiffs

"cross-fil[ed] their EEOC Charges with the NYSDHR"). Rather, election of remedies is only implicated once the NYSDHR "actually commenced an investigation or opened a file." *See id.*

Here, no party asserts that the NYSDHR actually investigated Plaintiff's claims. Furthermore, Plaintiff's counsel attests that he "confirmed by telephone with the [NYSDHR] that it has not handled the matter that Ms. Dinu filed with the EEOC" and that "the matter is not, nor has ever been, before the" NYSDHR. Diederich Decl. ¶¶ 15–16. Therefore, the Court concludes that Plaintiff has not voluntarily elected the NYSDHR administrative forum, and declines to dismiss Plaintiff's NYSHRL claim on this basis.

### 2. The Court Will Exercise Supplemental Jurisdiction Over Plaintiff's NYSHRL Claim

Defendants request that the Court exercise its discretion in declining to exercise supplemental jurisdiction over Plaintiff's singular state law claim. 28 U.S.C. § 1367 allows district courts to "decline to exercise supplemental jurisdiction over a claim" if

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

"Once a court identifies one of the factual predicates which corresponds to one of the subsection 1367(c) categories, the exercise of discretion is informed by whether remanding the [supplemental] state claim[] comports with the underlying objective of most sensibly accommodating the values of economy, convenience, fairness, and comity." *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 446 (2d Cir. 1998) (cleaned up).

The Court determines that Plaintiff's state employment discrimination and retaliation claim does not raise "a novel or complex issue of State law," does not "substantially predominate[]" over the federal discrimination claims, and the Court has not dismissed all claims over which it has original jurisdiction. *Id.*; 28 U.S.C. § 1367.

It is true that "courts in the Second Circuit have found that exceptional circumstances exist for declining jurisdiction under § 1367(c)(4) where the claims in federal court are duplicative of claims already asserted in parallel state court proceedings." *Spiezio v. Martinez*, No. 21-CV-1254 (LEK), 2025 WL 2781562, at *11 (N.D.N.Y. Sept. 30, 2025) (internal citation and quotation marks omitted) (collecting cases). However, while there are four other proceedings pending in New York state courts between Plaintiff and at least some of these Defendants, none of those parallel state court proceedings alleges claims of employment discrimination or retaliation under the NYSHRL. *See Dinu V*, ECF No. 60-1 (*Dinu I* Complaint); *Dinu V*, ECF No. 60-17 (*Dinu II* Complaint); *Dinu V*, ECF Nos. 60-19 to 60-20 (*Dinu III* Complaint); SAC.

Furthermore, even if the Court did find exceptional circumstances here, the Court will exercise supplemental jurisdiction over Plaintiff's NYSHRL claim. "Judicial resources would be not preserved by declining to exercise supplemental jurisdiction over [Plaintiff's] state law claims because the same factual issues will have to be considered to address [Plaintiff's federal] claims against [Defendants], even if supplemental jurisdiction is not exercised over [Plaintiff's state] claim[] against [Defendants]." *Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 498 F. App'x 98, 103 (2d Cir. 2012). Therefore, the Court denies Defendants' request to decline to exercise supplemental jurisdiction over Plaintiff's NYSHRL claim.

### 3. Defendants' Motion to Dismiss Plaintiff's Fourth Claim on its Merits Is Denied

Plaintiff's fourth claim, brought under the NYSHRL, alleges that Defendants engaged in disparate treatment of Plaintiff on the basis of gender and disability, and retaliated against her for complaining about such discrimination. Am. Compl. ¶¶ 339–42. Defendants contend Plaintiff has failed to assert sufficient allegations to state this claim.

The NYSHRL makes it unlawful for an "employer" to, on the basis of, *inter alia*, gender identity or expression, sex, or disability, "refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). Moreover, Section 296 of the NYSHRL provides that it "shall be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee." *Id.* § 296(3)(a).

The elements of a *prima facie* case of employment discrimination under the NYSHRL are: "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (alterations omitted). Here, Defendants, do not dispute the first and third elements—that is, that Plaintiff was part of a protected class and that she suffered an adverse employment action. *See* MTD.

Additionally, to the extent that Defendants dispute the second element—Plaintiff's qualifications—by raising that there were alternative reasons for their adverse employment actions against Plaintiff, *see* MTD at 28 (noting that Plaintiff had been issued warnings and generated repeated complaints from coworkers), the Court, at this motion to dismiss stage, takes

Plaintiff's allegations as true that she was qualified as "widely respected in her field," and had a sufficient "educational background, experience, [and] continuing educational, clinical and professional advancement in her field," Am. Compl. ¶¶ 13–14. These allegations and the fact that Plaintiff held her position as director "for almost six years" sufficiently pleads that Plaintiff was qualified for her position. *Id.*

Defendants also challenge that Plaintiff alleged the fourth element, a discriminatory motive. MTD at 28–29. Specifically, Defendants argue that Plaintiff fails to allege that her demotion or termination arose from gender or disability-based animus. *Id.* At the motion to dismiss stage, regarding the fourth element, under the "NYSHRL, a plaintiff must 'plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.'" *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (quoting 801 F.3d 72, 87 (2d Cir. 2015)). A plaintiff may do this by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87. The complaint must plead facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Here, Plaintiff alleges through direct quotes and conduct that her direct supervisor, Glennon, harbored gender-based and disability-based animus. *See* Am. Compl. ¶¶ 17–43. For example, Plaintiff alleges that Glennon engaged in "unwanted flirtatious" and "sexually inappropriate" conduct, including "groping" her at holiday parties and "sending her unwelcome texts of a personal nature late at night," which included references of her as his "mistress." *Id.* ¶¶ 18–19. Similarly, Plaintiff alleges that after removal of a brain tumor, Glennon "evidenced

increasing disdain and hostility toward" her and "mocked her about still-lingering brain-surgery related disabilities by accusing her of having memory failure." *Id.* ¶¶ 22, 38. Plaintiff further alleges that Glennon subsequently "baselessly criticized" her job performance during her annual leader review. *Id.* ¶ 24. Plaintiff informed the "top official" at Phelps about Glennon's behavior, but was subsequently demoted, denied her request to transfer, and terminated. *Id.* ¶¶ 50, 96, 242, 261.

These allegations are enough at the motion to dismiss stage to give rise to an inference that Plaintiff's demotion, refusal of transfer, and termination "occurred under circumstances giving rise to an inference of discrimination." *Menaker*, 935 F.3d at 30. Plaintiff has pleaded that her direct supervisor engaged in sexually harassing behavior on numerous occasions, and mocked her mental capacity following her brain surgery. *See* Am. Compl. ¶¶ 17–43. Plaintiff's allegations also sufficiently give rise to the inference, at this stage, that Plaintiff's supervisor was involved in the decisions to demote, refuse to transfer, and terminate Plaintiff's employment. *See id.* Additionally, Plaintiff has alleged that the higher officials at Phelps were aware of Glennon's behavior, but did not investigate Plaintiff's claims or intervene, except to demote, refuse to transfer, and terminate Plaintiff. *See id.* ¶¶ 41, 96–98, 108, 115–16, 261, 319. *See Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (where the plaintiff "provided evidence that both his immediate supervisor and the supervisor for the entire [department] were aware that he was experiencing a hostile work environment, yet neither took any action either to disapprove of or to remedy the situation," this evidence was "sufficient . . . to permit a trier-of-fact to find a specific basis for imputing the discriminatory conduct to the [employer]"). Therefore, Plaintiff has sufficiently alleged gender and disability-based discrimination under NYSHRL.

Furthermore, the NYSHRL makes it unlawful for an employer to retaliate or discriminate against an employee because she "has opposed any practices forbidden under this article or because . . . she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law. § 296(1)(e). To make out a *prima facie* case of retaliation, a plaintiff must establish: "(1) that she participated in an activity protected by [NYSHRL], (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). "The plaintiff's burden of proof at the prima facie stage is '*de minimis*.'" *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 335 (S.D.N.Y. 2024) (quoting *Hicks*, 593 F.3d at 166).

For a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) because [s]he has opposed any unlawful employment practice." *Id.* (quoting *Duplan*, 888 F.3d at 625). Close temporal proximity between a complaint and the allegedly retaliatory conduct "adequately raise[s] an inference of a causal connection between the protected activity and the alleged retaliatory conduct." *Id.* at 336 (a two-month gap between the complaint and retaliatory conduct was sufficient to raise an inference of causation in an NYSHRL retaliation claim) (collecting cases).

Here, Plaintiff has sufficiently alleged retaliation. Plaintiff lodged a complaint of gender-based and disability-based discrimination against Glennon on February 6, 2022. Am. Compl. ¶¶ 43–45. After almost six years of service as Director and only three months after Plaintiff's complaint against Glennon, she was demoted on May 2, 2022. *Id.* ¶¶ 14, 96. Subsequently,

Plaintiff was denied her request to transfer, and eventually, Plaintiff was terminated on January 13, 2023. *Id.* ¶¶ 240–41, 261. Taking as true the discriminatory comments and conduct by Glennon alongside the temporal proximity of Plaintiff's complaint about Glennon and her subsequent demotion, denial of transfer, and termination, Plaintiff has sufficiently alleged causation. *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554–55 (2d Cir. 2001) (five-month gap between protected activity and retaliatory act sufficiently close to support a causal inference). Therefore, Plaintiff has stated a retaliation claim under NYSHRL.[3]

Lastly, Defendants argue that Plaintiff has failed to state a NYSHRL claim against Defendant Dowling. MTD at 29–30. The NYSHRL makes it unlawful for an "employer" to discriminate on the basis of, *inter alia*, gender identity or expression, sex, or disability. N.Y. Exec. Law § 296(1)(a). "A supervisor is an 'employer' for purposes of establishing liability

---

[3] As discussed, whether Defendants intended to move to dismiss Plaintiff's third claim for failure to state a claim is unclear. Confusingly, Defendants argue the merits of Plaintiff's retaliation claim brought under the NYSHRL, but with respect to Plaintiff's correlate federal claim, Defendants only briefly state in a header—without further argument, or citation to law or fact—that "[e]ven if exhaustion were assumed, Plaintiff fails to plausibly allege that sex or disability motivated the termination." *Id.* at 25, 28–29.

Nevertheless, to the extent Defendants challenged the merits of Plaintiff's federal retaliation claim, the Court determines, for many of the same reasons as discussed in this Section with regard to Plaintiff's retaliation claim under NYSHRL, that Plaintiff's federal retaliation claim is sufficiently pleaded and will not be dismissed for failure to state a claim. *See Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) ("Retaliation claims brought under the NYSHRL . . . are subject to the same standards as federal claims under Title VII."); *De Souza v. New York*, 824 F. Supp. 3d 336, 368 (S.D.N.Y. 2026) (citing *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999)) ("The Second Circuit has instructed that the framework for analyzing Title VII retaliation claims is the same as that for ADA retaliation claims.").

However, as discussed, *see supra* Section II(a)(ii), to the extent Plaintiff's third cause of action relies on the stricken allegations about the conduct of attorneys in defending their clients in *Dinu I and II*, it is dismissed. *See* Am. Compl. ¶ 336 (Plaintiff pleading her federal claim of retaliation as arising in part from Defendants "directing and allowing [their] attorneys to engage in ongoing abusive and illegitimate litigation tactics against her").

under the NYSHRL if that supervisor actually participates in the conduct giving rise to the discrimination." *Feingold*, 366 F.3d at 157 (cleaned up). Similarly, the NYSHRL makes it unlawful for "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6). The Second Circuit has determined that such aiding and abetting has occurred when the person "actually participates in the conduct giving rise to a discrimination claim." *Feingold*, 366 F.3d at 158 (internal citation and quotation marks omitted).

Caselaw supports the proposition that supervisory personnel can be subject to aiding and abetting liability if they "fail[ed] to take sufficient action in response to discrimination, [and thus] 'encouraged, condoned, or approved' of the unlawful activity." *Nezaj*, 719 F. Supp. 3d at 333 (quoting *Hicks v. IBM*, 44 F. Supp. 2d 593, 600 (S.D.N.Y. 1999)) (collecting cases). For example, a court denied a motion to dismiss aiding and abetting claims where a plaintiff alleged "that he informed [a supervisor] on at least two occasions of discrimination, yet she did nothing to address the problem." *Al-Shimary v. State Univ. of New York at Binghamton*, No. 22-CV-1282 (TJM) (ML), 2023 WL 7128861, at *6 (N.D.N.Y. Oct. 30, 2023). Therefore, a "supervisor who 'took no action to remedy . . . behavior' that violated the NYSHRL 'although they were aware of it' . . . can be liable for aiding and abetting as well." *Id.* at *5 (quoting *Feingold*, 366 F.3d at 158).

Here, Plaintiff has sufficiently alleged that the only remaining individual Defendant in *Dinu V*—Dowling—"is an aider and abettor under the" NYSHRL. Am. Compl. ¶ 342. Plaintiff alleges that after her demotion, "she communicated directly to Defendant Dowling, seeking his aid, explaining that the corporate defendants were discriminating and retaliating against her on behalf of Mr. Glennon." *Id.* ¶ 126. However, instead of investigating Plaintiff's complaint,

Dowling "refused or neglected to help protect Ms. Dinu's legal rights against the corporate Defendants (and their attorneys') violation thereof." *Id.* ¶¶ 127–31.

Although the Court notes that any allegations regarding Defendants' counsel's litigation tactics in *Dinu I* and *Dinu II* are stricken, *see, e.g., Id.* ¶ 127 (stricken to the extent it makes allegations regarding Dowling allowing his counsel "to undertake retaliatory litigation tactics"), Plaintiff has still sufficiently alleged that she informed Dowling of her allegedly retaliatory demotion, and he failed to act. These allegations are sufficient to constitute aiding and abetting at this stage. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's fourth claim against Dowling.

### B. Defendants' Motion for Sanctions Is Denied in Part and Granted in Part

Finally, the Court considers Defendants' motion for sanctions against Plaintiff and her counsel. MTD at 20–21. The Court declines to impose case-terminating sanctions, but instead instates a narrow litigation bar.

#### i. The Court Declines to Impose Case-Terminating Sanctions

Defendants request that the Court, under its inherent authority and Federal Rule of Civil Procedure 41(b), impose case-terminating sanctions for bad-faith abuse of the judicial process. MTD at 20–21. *See also Simmons v. Abruzzo*, 49 F.3d at 87 ("The district court also has the power under Fed. R. Civ. P. 41(b) to dismiss a complaint for failure to comply with a court order, treating the noncompliance as a failure to prosecute."). Defendants' provided grounds for sanctions are Plaintiff's "serially multiplied proceedings over the same employment relationship," mischaracterizations of the relevant EEOC charge, and insistence on bringing her litigation-based retaliation claims. *Id.*

"[A] district court [is required to] at least consider lesser remedial measures before imposing" the sanction of dismissal. *Shepherd v. Annucci*, 921 F.3d 89, 97 (2d Cir. 2019). Here, the Court declines to impose such a harsh sanction of case termination, in favor of lesser alternatives: imposition of a filing injunction in response to Plaintiff's repeated initiations of new cases and dismissal of all of Plaintiff's claims to the extent they arise from her baseless allegations that Defendants' counsel's zealous representation of her client constitutes retaliation or a civil rights violation. *See infra* Section II(B)(ii). Plaintiff's remaining claims of discrimination, hostile work environment, and employer-based retaliation can and should be litigated for the reasons stated above.

**ii. Defendants' Request for a Limited Litigation Bar Is Granted**

The Court grants Defendants' request that Plaintiff and her counsel be required to seek leave of court before filing a new action against Defendants or Defendant's counsel based on allegations about her employment, her demotion, and her termination. MTD at 21.

District courts "may impose sanctions, including restrictions on future access to the judicial system" when a "litigant has a history of filing 'vexatious, harassing or duplicative lawsuits.'" *Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) (quoting *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005)); *see also Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)). The Second Circuit has set out the factors to be considered in barring a litigant's access to courts:

> (1) the litigant's history of litigation and whether it entailed bringing vexatious, harassing, or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation (e.g., whether the litigant has an objective good-faith expectation of prevailing); (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Woodhouse v. Meta Platforms Inc.*, 704 F. Supp. 3d 502, 514 (S.D.N.Y. 2023) (citing *Safir*, 792 F.2d at 24). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.*

The first *Safir* factor, inquiring as to whether a litigant has engaged in vexatious, harassing, or duplicative lawsuits, weighs in favor of a pre-litigation injunction. Including this action, Plaintiff has filed five lawsuits in the past four years, all arising in various ways from the same or related underlying facts of Plaintiff's employment with Phelps and the way it ended. *See* ECF No. 60-1 (*Dinu I* Complaint); ECF No. 60-17 (*Dinu II* Complaint); ECF Nos. 60-19 to 60-20 (*Dinu III* Complaint); *Dinu IV*; *Dinu V*. *See also Woodhouse*, 704 F. Supp. 3d at 515 (concluding that a plaintiff who had "initiated 12 lawsuits" in nine years was a "vexatious litigant who, if unchecked, will continue to abuse the judicial process through similar maneuvers"). Therefore, the first *Safir* factor weighs towards sanction.

The second *Safir* factor, examining whether a litigant has an objective good-faith expectation of prevailing, also weighs in part against Plaintiff. Plaintiff has yet to prevail in any of her prior lawsuits. Although there is no indication that Plaintiff acts in bad faith, "[g]iven the history of failed claims, Plaintiff does not have an objective, good faith expectation of prevailing in a future action." *Sunnen v. N.Y. State Dep't of Health*, No. 17-CV-1014 (VSB), 2018 WL 9342803, at *3 (S.D.N.Y. Oct. 10, 2018), *aff'd*, 792 F. App'x 113 (2d Cir. 2020).

Furthermore, Plaintiff's counsel has shown an insistence on filing claims even when legal bases for those claims are lacking. *See supra* Section II(A)(iv). Specifically, Plaintiff brought her claims of retaliatory litigation without proper bases in fact or in caselaw, even after the Court explicitly warned Plaintiff's counsel to consider carefully the viability of these claims. Therefore,

the second *Safir* factor also weighs toward injunctive relief. Similarly, the third *Safir* factor—whether the litigant is represented by counsel—weighs in favor of Defendants, because Plaintiff is represented by counsel.

Next, the fourth factor, which considers whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts, weighs towards sanction. Plaintiff's multiple lawsuits have posed an unnecessary burden on the courts, by bringing claims arising from the same facts in multiple state, and now federal, forums. Additionally, Plaintiff has caused needless expense to Defendants Northwell, Phelps, and Dowling, who all have had to defend against Plaintiff's claims in multiple lawsuits, including the present actions. *See* ECF No. 60-1 (suing, *inter alia*, Northwell and Dowling in the *Dinu I* Complaint); ECF No. 60-17 (suing Phelps in the *Dinu II* Complaint); ECF Nos. 60-19 to 60-20 (suing Phelps in the *Dinu III* Complaint); *Dinu IV* (suing, *inter alia*, Northwell and Dowling); *Dinu V* (suing Northwell, Phelps, and Dowling in the present suit). Therefore, the fourth *Safir* factor also weighs in favor of an injunction.

Finally, the fifth factor, which is whether other sanctions would be adequate to protect the courts and other parties, weighs in favor of a limited pre-litigation injunction. Here, a tailored and narrow pre-litigation injunction is a "less drastic remedy" than complete foreclosure from initiating certain kinds of cases. *In re Martin-Trigona*, 9 F.3d 226, 229 (2d Cir. 1993). Considering all the *Safir* factors, the Court finds that a limited bar on Plaintiff's ability to file future litigation is warranted.

The Court now considers what kind of pre-litigation injunction is appropriate here:

> The Second Circuit has cited with approval injunctions that prohibited the filing of any matters in a designated category; that prohibited the filing of an action against designated parties in demonstrated need of protection; that required leave of court for

> future filings; and that required the vexatious litigant to post a bond prior to any future filing.

*Woodhouse v. Meta Platforms Inc.*, 704 F. Supp. 3d 502, 517 (S.D.N.Y. 2023) (citing *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994)).

The Court imposes an injunction against Plaintiff with some of these features. Prior to initiating a suit against any of Defendants Northwell, Phelps, or Dowling, or any of these Defendants' counsel, Plaintiff must seek leave of the court to file, which requires "fil[ing] an affidavit with the [c]ourt explaining how his proposed claims against the protected [Defendants] are distinct from those raised in earlier dismissed lawsuits and why they are non-frivolous." *Id.* The Court limits this injunction to the United States Court for the Southern District of New York and New York state courts, because there is no showing that nationwide relief is necessary and proper here. *See id.* at 517–21; *Li v. Alibaba Grp. Holding, Ltd.*, No. 21-2525, 2023 WL 2053072, at *3 (2d Cir. Feb. 17, 2023) (finding that a district court did not exceed "its authority in extending the injunction to cover state court suits because [the Second Circuit understood] the pre-litigation injunction to apply to state court suits only when such suits are brought against parties whom [the plaintiff] has previously encountered in litigation on this subject-matter in federal court").

Therefore, the Court grants injunctive relief requiring Plaintiff to seek leave of the court before filing any future lawsuits in this District or in New York state courts against Northwell, Phelps, and Dowling arising from Plaintiff's employment with Phelps or against Defendants' counsel arising out of their defense of their clients.

## CONCLUSION

### *Dinu IV* (25-CV-9972)

In 25-CV-9972, the Court GRANTS Plaintiff's Motion to Remand, but DENIES Plaintiff's request for attorney's fees. Accordingly, the Court REMANDS this action to the Westchester County Supreme Court.

Regarding 25-CV-9972, the Clerk of Court is directed to terminate ECF Nos. 6 and 13, and to close this case.

### *Dinu V* (25-CV-3281)

In 25-CV-3281, the Court DENIES IN PART and GRANTS IN PART Defendants' Motion to Dismiss, in the alternative to strike, and for sanctions. Specifically, the Court strikes all of Plaintiff's allegations in her Second Amended Complaint related to Defendants' counsel's litigation tactics in underlying state actions. Accordingly, the Court dismisses Plaintiff's claims to the extent they arise from these stricken allegations, which includes in part Plaintiff's third cause of action of retaliation under the ADA and Title VII and fourth cause of action of retaliation under NYSHRL; and in whole Plaintiff's fifth and sixth causes of actions under 42 U.S.C. §§ 1985 and 1986, respectively.

Furthermore, prior to any future filings in the United States District Court for the Southern District of New York or New York state courts against Northwell Health Inc., Phelps Memorial Hospital Association, or Michael J. Dowling, or these Defendants' counsel, the Court orders Plaintiff to seek leave of that court to initiate the lawsuit. When seeking leave, Plaintiff must file: (1) an affidavit explaining how her proposed claims against the protected Defendants are distinct from those raised in earlier dismissed lawsuits and why they are non-frivolous; and (2) a copy of this order.

In 25-CV-3281, the Clerk of Court is directed to terminate ECF No. 58.

Dated: September 30, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge